5 R. C. L. Supp. p. 1579; 6 R. C. L. Supp. p. 1763. (6) Workmen's Compensation Acts —C. J. p. 125, §131 (Anno). (7) Workmen's Compensation Acts—C. J. p. 125, §131 (Anno.)

---

## CHICAGO, R. I. & P. RY. CO. v. WEST.

No. 16128—Opinion Filed Feb. 16, 1926.

Rehearing Denied March 22, 1927.

**1. Negligence—Personal Injuries — Proximate Cause—Proof.**

Negligence is the basis for recovery in an action for damages for personal injuries, and the negligence must be proved, by preponderance of the evidence, as the proximate cause of the injuries complained of, and where there is a failure of proof and defendant demurs to the evidence, it is error for the court to overrule the demurrer.

**2. Trial—Instructed Verdict—When Proper.**

Where it appears from all the evidence introduced that there is no conflict on the material facts in the case, a motion for an instructed verdict for the proper party should be sustained.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by I. M. West against the Chicago, Rock Island & Pacific Railway Company for damages. Judgment for plaintiff, and defendant appeals. Reversed.

W. R. Bleakmore, John Barry, A. T. Boys, and W. F. Collins, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, and A. G. Morrison, for defendant in error.

Opinion by THREADGILL, C. On August 31, 1923, defendant in error, as plaintiff, brought action against plaintiff in error, as defendant, to recover damages for a personal injury sustained in the nature of a hernia, alleged to have been caused by the negligence of his fellow employes, in placing a hand car on defendant's railway track. The acts of negligence, as stated in the petition and relied on as the basis of the action, are as follows:

"That this plaintiff was engaged, with five other men, including the foreman of the gang, in repairing and lining up and working upon the said track at said point, the work being done about two miles north of the city of Duncan, Okla.; that while engaged in said interstate commerce work, the said section gang was using a motor car and it became necessary to place said motor car back on the track, the same having been placed by the side of the track prior thereto; that in placing said car upon the track, the light end was first run over the first rail and up against the other rail, the light end thus resting on the rail. The foreman and one man took charge of the light end while three of the men, including the plaintiff, and two other men took hold of the heavy end and carried it around in order to place the wheels of the heavy end on the rails, it being the duty of the said foreman and his men to hold the light end so that the wheels would remain upon the rail, and that thereby the motor car would be placed with all the wheels evenly on the rails, but when the plaintiff and the other two men took the heavy end of the car around and reached the top of the rails with said end, the said foreman and the man with him, instead of holding the light end with the wheels on the rail, suddenly let the wheels on the light end slip off, and the said light end fell suddenly dropping the wheels down by the side of the rail, and causing a violent jerk to the car, the lift being made by the plaintiff and said two men being a very heavy lift, and the plaintiff was thereby thrown forward against the frame of the car and severely bruised and ruptured in his groin and private parts, the same being brought about by the negligence of the said defendant through its section foreman and the man working with him, in that they negligently let said motor car wheels fall and slip from the rails, thereby causing the sudden jerk as aforesaid. That each and all of said acts of omission and commission of said foreman and the man working with him were negligent on the part of the defendant, and were the proximate cause of this plaintiff's injuries."

It appears from the statement that plaintiff means to say that it was the duty of the section foreman and his men to hold the light or front end of the car steadily and firmly, in placing the front wheels on the track or rails at the same time plaintiff and his men were placing the hind wheels on the track, and the section foreman and his men violated this duty by permitting the front wheels to slip off and suddenly drop from the track to the ground, which caused a jerk that injured the plaintiff.

Defendant answered by a general denial and a plea of assumption of risk. The cause was tried to a jury June 19, 1924, and resulted in a verdict and judgment in favor of the plaintiff, and defendant has appealed and urges two assignments of error for reversal: "First: The court erred in ov-

erruling the demurrer of the defendant to the evidence introduced and offered by the plaintiff. Second: The court erred in denying the motion of the defendant for a directed verdict in its favor." In presenting these specifications of error, defendant contends that the sole question involved is whether or not the verdict is sustained by the evidence. It is conceded that the rule as to liability under the Federal Employers' Liability Act, United States Comp. St., sections 8657-8665, is applicable to the case, if the evidence is sufficient to show primary negligence. It is fundamental in cases of this character, that the fact of an injury does not carry with it any presumption of negligence on the part of the employer. The rule of this court in the case of O'Neil, Receiver, v. Vie, 94 Okla. 68, 220 Pac. 853, is stated as follows:

"Negligence must be shown by evidence, and the evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury in the sense more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results."

The material facts as to negligence testified to by plaintiff are undisputed. He was working as a section hand on defendant's railroad near Duncan, and had been employed at that work for about four months. The crew consisted of a section foreman and four men. They used a motor car in going to and from their work, which the five men could lift on and off the track at any place they saw fit. The front end was lighter than the rear end. On February 17, 1923, at the time plaintiff claims he was injured, the five men were trying to place the car on the track in the usual way after finishing the day's work. The railroad runs north and south. The car had been set off on the east side of the track. In placing the car on the track they rolled the front end across the east rail and on to where the front wheels were against the west rail, then plaintiff and two of the men took hold of the rear end of the car, plaintiff being at the left-hand corner, and the other two men to his right, and the foreman and one man took hold of the front, and while the men at the front bore down on that end of the car the men at the rear lifted up the rear end and carried it across to the right to bring the car in line with the track. To use the language of the plaintiff:

"We had just finished up work and we were putting this car on the track and I was at work on the stiff end or the heavy end, and we moved this car up on the track and we put the two wheels, what we call the light end, on the rails as we usually did, and the men that always work on the back end; we picked up the heavy end and carried it around north, and as we came around the men on the front end would assist us in pulling down on their end, but the wheels slipped off the rail and I was not in a position at that time to see the wheels, but when I looked around I saw that the front wheels had slipped off the railing."

The frame of the car is built on two "sills," and an iron rod runs through the sills at each end, which is about 18 inches from the top of the track, and is used in lifting and holding the car. Plaintiff stated that when the front wheels slipped off, he was lifting or had hold of the iron rod right against the end of the sill on his side, and was just about crossing over the east rail, when the sudden drop of the front end jerked him against the corner of the sill, and brought his left groin in contact with it and caused his injury.

On cross-examination he said:

"Q. After that you three men on the east end of the car walked around towards the north of the car to put it on the rails? A. Yes, sir. Q. Now, at the time you got around here, where were the front wheels? A. They were supposed to be——. Q. Where were they? Not where they were supposed to be. Where were the front wheels? A. Well, this wheel over here was against this rail and this one against this rail (illustrating). Q. Now, go ahead and explain what was done. Show the jury exactly what was done there. A. I am not positive. As well as I remember this wheel over here is the one that quit the rail. Q. You think; you don't know, but you think it was the front wheel on the west rail? A. That is my recollection. Q. You think it was upon the rail at the time you began to move your end of the motor car around? A. It was not on the rail when we began to move. Q. Where was it? A. It was supposed to be. I never saw it. Q. On this particular occasion you don't know where the wheel was? A. I didn't see it. Q. Don't you know as a matter of fact it never was lifted on this west rail, this front wheel? A. I know it was over the rail. Q. Did you see the wheel on the rail? A. No, I didn't see the wheel on the rail. Q. Now, as a matter of fact, you don't know who it was, if anyone, who lifted up that wheel and put it on the rail, do you? A. As well as I

remember it wasn't anyone. Q. If no one did, how did it get upon the rail? A. Just forced over there by pulling on the car."

He further stated that he had assisted in taking the car off and putting it on every day during the time he was employed: -

"Q. Did that the same way each day, didn't you? A. We put it on the track and shoved it over against the rail and put it on the track. Q. Done it about the same way each time? A. No, sir, not the same way. Q. Tell the jury what was the difference? A. Way we put it on down here we put the wheels on and let it slip on over the rails, and at that time we nearly got one end on and it dropped off the rails. Q. How do you know, did you see it? A. I know it dropped off. Q. As a matter of fact, you never seen anything like that at all? A. No, sir. I didn't see it when it dropped off. Q. After it dropped off you went around and saw the front wheels? A. I saw them putting it back on the track. Q. How did they put it back? A. Just lifted it up and put it back on the track. * * * Q. About the time you say you got that punch in the groin you were stepping across the east side of the track? A. That is my judgment, but I wouldn't say positively whether I was or wasn't. Q. As a matter of fact, you put that car on there just about the same as you did on every other occasion? A. No, sir. Q. What was the difference? A. Because we had been in the habit of putting the wheels on without pushing or anything of the sort, and at that time we didn't. Q. What did you do that was different on that occasion than you had on other occasions? A. Me and the boys on my end did the same as we did on other occasions. Q. What did the other boys do? A. They let their end slip off the track. Q. Didn't you tell the jury you didn't see them? A. I didn't see them drop it off, I seen them put it back. Q. If it dropped off what caused it? A. Running over the rail causing the hand car to jerk. Q. Just went over the rail and caused it to jerk? A. Yes. sir. Q. And the two men with you were following it around like this when it dropped? A. We were."

He also stated that on the Saturday after the accident. which was a week later, he went to Davis in a Ford delivery car with a family by the name of Anderson, consisting of the father and mother and two children. Anderson and his wife occupied the seat, and he and the two children sat on the floor of the car, and when they were a short distance from Davis, the car turned over and caught him and Anderson and his wife under it. and he and a man that came by helped to lift the car off of Anderson and his wife, but he stated this accident did not injure him. There was evidence as to the nature of the injury and plaintiff's treatment in the hospital. and he was asked to identify two reports as to how he was injured, signed by him, one to the railway company and one to this physician, in both of which he made no complaint of negligence against the defendant. It is true he explains this by saying he was prompted by others in making the reports.

The defendant demurred to plaintiff's evidence on the ground that it was not sufficient to entitle him to recover, which was overruled and defendant excepted. The demurrer admits the facts of the evidence to be true. It must therefore be taken that plaintiff was in the employ of defendant as a section hand. The crew consisted of five men, including the foreman. They used a motor hand car in going to and returning from their work. The five men could and did handle the car in setting it off and on the track. Plaintiff was injured in the region of the left groin by coming in contact with the end of the frame work, or sill, of the rear end of the car at the left corner of that end. They were placing the car on the track in the usual manner. He and two other men were lifting at the iron rod handle and swinging the rear end of the car to the right to bring it up and over upon the rails. The foreman and another man were holding on to the front end to guide the front wheels on to the rails, and just as the car was about in line with the rails, the front wheels dropped from the track to the ground, about four or five inches, which caused a jerk that brought plaintiff against the corner of the sill, as he was stepping over the east rail and placing the rear end on the track, and injured him. He could not see just what the two men at the front were doing. He could not see the front wheels when they slipped off. He walked around to the front and saw the two men lifting the front end and placing it on the track. He could not remember whether or n t it was a usual occurrence for the front wheels of the car to slip off the rails as they were placing the car on the track. He admitted he said there was no negligence that caused his injury in the reports he signed, but explained that his statements in the reports were suggested by others. Now, admitting all these facts as stated to be true, where is the negligence as defined by the rule above quoted? We fail to find it.

Thereupon, defendant offered its evidence, the witnesses being the section foreman and the men working with the plaintiff at the time he claims he was injured. Their testimony does not contradict the material facts testified to by plaintiff, but they explain the actions of the men at the front end of the car and the action of the car at that end,

which plaintiff could not explain because, as he stated, he could not see from his position. The foreman of the section guided the front end on the west side on to the rail and as he and his helper were in the act of getting the other front wheel on the east rail, the rear end of the car swung around to the west, and being pressed from the rear, the said wheel slipped over the rail and the front end of the car dropped to the cross-ties. They said this was a common occurrence. Plaintiff did not offer any testimony to contradict this. He could not remember whether it was a common occurrence or not. He did not say it was not common, he simply could not remember.

It appears from defendant's evidence—from the testimony of the witnesses who were in a position to say and know the facts—that the front wheel on the west side of the car was on the rail and the one on the east side was just brought to position on the east rail, when the force from the rear caused it to jump the rail and fall on the outside of the track, while the other front wheel slipped off on the inside of the track. We fail to see any act of negligence on the part of the foreman and his helper. There is no evidence to show that they acted, on this occasion, differently from the usual manner of handling this car and placing it on the track, and there is no evidence that the car acted differently from the common occurrence.

Defendant asked the court, at the close of all the evidence, to instruct a verdict for defendant, which was overruled, and defendant excepted. We fail to find any evidence of primary negligence in the case, and it is therefore unnecessary to consider the question of assumption of risk. We think the rule of this court, as above quoted, should be applied to the facts in the case. and under this rule there is no liability.

We are of the opinion that the court committed error, in the first instance, in overruling the demurrer to plaintiff's evidence, and in the second instance, in overruling defendant's motion for an instructed verdict. The cause should be reversed, and a new trial ordered.

By the Court: It is so ordered.