Note.—See under (1) 35 Cyc. p. 356; 24 R. C. L. p. 49; 4 R. C. L. Supp. p. 1527. (2) 35 Cyc. p. 303, 304; 24 R. C. L. p. 50.

---

## DAVIS et ux. v. LAWSON et al.

No. 16662—Opinion Filed May 25, 1926.

**1. Negligence—Proximate Cause.**

In order to make a case of primary negligence, plaintiff must not only establish the negligence relied upon, but must prove a causal relation between such negligence and the injury complained of as proximately resulting therefrom.

**2. Railroads—Liability for Personal Injuries—Lack of Evidence of Negligence.**

A railroad company will not be held liable for personal injuries, where there is no positive evidence, no reasonable inference, to be drawn from the testimony that the railroad company was guilty of negligence.

**3. Same — Judgment for Defendants Sustained.**

Under the foregoing, judgment for defendants on demurrer is affirmed.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by Dave Davis et ux., as next of kin, against Willis Lawson and Midland Valley Railroad Company for damages for the death of their son. From a judgment for defendants on demurrer, plaintiffs appeal. Affirmed.

Moss & Farmer and A. P. Carr, for plaintiffs in error.

O. E. Swan, Grinstead & Scott, Hamilton & Gross, and Charles R. Gray, for defendants in error.

Opinion by ESTES, C. Parties appear in the same order as in the trial court. Davis and wife, as next of kin, sued defendant Lawson, the engineer in charge of the freight train, and the Midland Valley Railroad Company, in damages for the death of their son. The line of defendant's railroad extends from the city of Pawhuska in an almost easterly direction, parallel with which and about 100 feet south thereof, is the improved public highway, called the Pershing road. About one mile east of the city limits is a north and south road, crossing said Pershing road and said railroad track, the latter known as the Nelogany crossing. At said Nelogany crossing the track is elevated or graded several feet above the public road. The railroad east of said crossing is slightly curved and is on the upgrade for about one-half mile east of said crossing, from which point, and for about one-half mile farther east, there is a declination in the elevation of the track; that is, a train coming from the east to Pawhuska ascends the grade to the top of the elevation, about one-half mile east of the Nelogany crossing, and from that point descends to and by said crossing into the city of Pawhuska. The deceased, a boy of 15, on August 15, 1923, was working for, and residing at the home of, a friend in Pawhuska, and in the very early morning of August 16th arose and started to a pasture east of the city to get some work mules. Between three and four o'clock on that day, an acquaintance of the boy was driving an automobile to the east on said Pershing road from the city. Although the evidence tends to show that this boy intended so to go east of the city to procure said mules, this person in the car, going from Pawhuska to the east, met the boy coming from the east toward Pawhuska on foot, and talked with him at a point on the Pershing road nearly a mile west of said Nelogany crossing, which point must have been on the Pershing road just outside the city limits. Soon thereafter, defendant's freight train in charge of defendant Lawson, engineer, came from the east toward the city. About one-half mile west of Nelogany crossing, and about one or two blocks north of the railroad track, were three small houses. In one of these homes, a child had died and the good neighbor ladies were keeping watch during the night of August 15th, including the early morning of August 16th. The windows and

doors were open. One witness for plaintiff testified that she heard this train—

"just lugging or puffing up the grade. It pulled there something like 15 or 20 minutes coming up the grade, and when it got to the top of the grade, it threw the brakes off down hill, and it never made a bit of noise until we supposed it had run into the boy and gave that shrill whistle. Q. Could you tell from what you heard and your surroundings about where the engine was when it gave the shrill whistle you are talking about? A. Well, it was right on east, just past the Nelogany crossing, coming this way."

The testimony of this witness and another lady is that the train stopped soon after the engine passed the Nelogany crossing, backed up, and in about ten minutes proceeded westward into the city; that the engine bore a headlight, but that it was not very bright. After the train had backed up, one witness clearly saw an intervening telegraph pole just north of the track by means of the headlight. Another witness in the same house heard the train coasting down the grade to the crossing. These witnesses were about a block north of the track, which is about 100 feet north of the Pershing road. Soon after the train had gone forward to the city, they heard and saw the ambulance coming from the city along the Pershing road going to and returning from the Nelogany crossing. The ambulance driver found one lower limb of the boy severed and lying between the rails of defendant's track on the Nelogany crossing, where the traveled portion of the highway crosses the track north and south, and found the boy, still alive, lying between the rails at about the west line of the highway on the Nelogany crossing. He expired soon after they carried him to the hospital in the city. The record does not disclose any other material facts or circumstances. The court sustained the demurrer of the defendants thereto, directed verdict for defendants, and rendered judgment accordingly. Plaintiffs appeal.

The negligence alleged is that there was a steep grade at the crossing where the boy was killed; that there was no warning device at the crossing; that no whistle was sounded or bell rung; that the headlight on the engine was of less power than required by statute, and that the engineer failed to keep a lookout. While the Nelogany crossing was higher than the level of the road, running north and south, there is no evidence that there were any extra dangers. There is no evidence of hills, trees, or other obstructions, but, on the contrary, the train and track were in plain view of any one approaching said crossing. There was no negligence in failure of the railroad to maintain a warning device at said crossing as an extra precaution, because this crossing was in the country about one mile east of the city limits, and there is nothing to bring this crossing within the rule requiring such extra precaution. R. R. Co. v. Ives, 144 U. S. 408, 36 L. Ed. 485. There is no evidence that the engineer failed to keep a lookout. While one witness stated, as a conclusion, that the headlight was not very good, it was sufficient by which she could discern said intervening telegraph pole when she was about one-half mile away. There is thus no evidence to support such allegation of negligence as to the headlight. There is competent evidence to go to the jury that the bell was not rung before the train reached the crossing, and some evidence that the whistle was not blown, although one witness testified, so as aforesaid, that a shrill whistle was blown east of the crossing.

It is the theory of plaintiffs—pleaded by them—that the boy received the injuries from which he died while traveling on foot upon said crossing going toward the north. In order to make a case of primary negligence, plaintiff must not only establish the negligence relied upon, but must prove a causal relation between such negligence and the injury complained of as proximately resulting therefrom. The only negligence of which there is any evidence, is failure to blow the whistle and ring the bell on approaching the crossing. What evidence is there that the said negligence was the proximate cause of the death—of the causal relation between the neglect of the warning and the death? This proof might have been made by direct evidence, of which there is none. It might have been made as any other fact may be proved, by indirect or circumstantial evidence, from which circumstances the fact of such causal relation or proximate cause could be inferred. In such case, the circumstances must be such as reasonably lead up to and establish the facts sought to be proved, such causal relation. Moreover, the circumstances relied upon must themselves be proved and not presumed. Schaff, Receiver, v. Ferry, 105 Okla. 259, 232 Pac. 407. There is no direct evidence that this boy walked upon said crossing as a traveler upon the highway. That he intended going east of the city to procure the mules and was seen on the Pershing road about one mile west and 100 feet south of said crossing, although at that time going in the opposite direction, are circumstances from which it might be inferred that he came upon said crossing as alleged; it is

an inference from proven circumstances. He might have gotten upon the crossing in some other manner, as by going to the track from the Pershing road, and thence walking east ward on the track to said crossing, but w/ do not consider such to be so rational a· inference. As laid in the case cited, supra an inference cannot be based upon an infe ence, a presumption upon a presumption. W are thus met with an insurmountable ol stacle in attempting to connect further th' said negligence of defendants with the deatl While we may place the boy upon the cross ing as a traveler—not as a trespasser—by an inference cannot be based upon an infer stance to show that the negligence—the fail ure to ring the bell and blow the whistle— proximately caused or had anything to do with his injury and subsequent death. There is no circumstance from which this can even be inferred, and if there were, it would in volve predicating such inference upon the inference that the boy was a traveler upon the highway to whom defendants owed a duty as such. The fact that this boy was so injured carries with it no presumption of negligence—does not supply the missing link in the chain of causation. New et al. v. Bradshaw, 89 Okla. 205, 214 Pac. 557. We presume that this boy, on approaching said crossing, was in possession of his senses and used ordinary prudence and care for his own safety. The evidence of plaintiffs is that this freight train tugged up the grade east of this crossing, and its coming up such grade was heard by plaintiffs' witnesses one-half mile west of the crossing, one witness hearing the noise of the train as it descended the grade to the crossing. The track east of the crossing being in plain view, the boy, in the exercise of ordinary care, could have seen the headlight as the train approached the crossing. Since the boy did see said headlight and hear the noise of said train, or should have done so in the exercise of or dinary care for his own safety, then the proximate cause of his injury was not the failure to blow the whistle and ring the bell. It thus appears that the evidence of plaintiffs themselves shows that the negli gence relied upon was not the proximate cause of the injury, and plaintiffs failed to prove any causal relation between the neg ligence and the injury.

"A railroad company will not be held liable for personal injuries, where there is no posi tive evidence, no reasonable inference, to be drawn from the testimony that the railroad company was guilty of negligence." C., R. I. & P. R. R. Co. v. Pedigo, 102 Okla. 72, 226 Pac. 72.

It is unnecessary to consider other assign ments of error. Let the judgment be af firmed.

By the Court: It is so ordered.