## KANSAS CITY, M. & O. RY, CO. v. BISHOP.

No. 19074. Opinion Filed Oct. 22, 1929.

Rehearing Denied Dec. 17, 1929.

W. H. Moore, E. A. Boyd, and Robinson & Oden, for plaintiff in error.

Whiteside & Snodgrass, for defendant in error.

BENNETT, C. John Bishop, a carpenter, who sometimes did common labor, brought suit for damages against Kansas City, Mexico & Orient Railway Company, defendant below, alleging that he was injured by reason of negligence of the railway company.

The petition was in the usual form and so much of the allegations thereof and of the evidence supporting same as may be necessary to understand the points at issue will be hereinafter set out.

The allegations of negligence are: First, that defendant did not furnish plaintiff a safe place in which to work, and did not warn plaintiff of the dangers incident to such work; second, furnished insufficient employees to properly perform the work;

third, furnished incompetent servants; fourth, that defendant's employee, Tom Palmer, carelessly and negligently allowed a certain heavy timber to fall and injure plaintiff.

The substance of the evidence is as follows:

John Bishop, plaintiff and married man with family, was working in the construction department of defendant in April, 1927, and earning about $100 per month. Was first employed in building foundation under the depot, but later helped to construct a concrete tank whereon he was working at the time he was injured. The tank was built by pouring concrete into forms located in an excavation. The tank was about 28 feet square and about 15 feet deep. The excavation was larger than the tank and extended for about six feet outside of and around the tank to a depth of about 10 or 15 feet. Two certain heavy parallel timbers were placed east and west across the top of the tank. On these timbers were placed short planks so that concrete might be carried on the tank and poured into the forms. Plaintiff had been engaged in wheeling concrete on the tank for such purpose. After the tank was complete, defendant's foreman of construction told plaintiff and three other employees to get certain 2 by 12 boards from a nearby lumber pile and make a walk way from the tank to the surface of the ground and remove the timbers from the top of the tank. They secured two 2 by 12 boards from a nearby lumber pile and laid them parallel to each other from the north wall of the tank to the surface of the ground. The south end of the east plank was set back from the side of the east wall of the tank with which it was parallel a distance of about 14 inches and the west board occupied the same relative position with respect to the west wall of the tank.

After removing the short planks from the stringers, plaintiff and Bill Hines placed a timber bar under the east end and Palmer and Humphreys, two other employees, did the same with reference to the west end of one of the stringers and the four thus raised and carried the same sidewise towards the north wall of the tank, the first two employees walking on the east wall, the other employees on the west wall of the tank, and plaintiff, in describing the accident says:

"Ours (end of the 2x12) was back to the west and the one they had to walk on was set back to the east; so when we got out there, that throwed us all to have to step

towards each other, and the bars under this heavy timber, it couldn't slip so someone was bound to go down, I guess."

Plaintiff testified that the employees carrying the east end of the timber were facing the east and could not see those carrying the west end, and the following question was asked the plaintiff:

"Q. Then what happened? A. Well, we all started out; when we got to this corner where we had to step back, the first thing I knowed this timber fell down, and caught me, my hand under between it and the timber bar"

—and three bones in the hand were broken and the thumb knocked out of place.

Plaintiff went to work on the tank about April 9th. Was hurt two days after that. The stringers were on the concrete tank when plaintiff went to work, but he and his co-employees put the planks across the timbers after they went to work there. These men were instructed to get the timbers off and clean up that place.

The following is part of plaintiff's testimony:

"Q. And you four men didn't have any difficulty in picking that timber up? A. Well, it wasn't the lightest in the world. Q. You had no— A. If we had been out—it wouldn't have been no awful load if we had been out where we could have had plenty of room to walk, no, sir. Q. So you went on with your work, you hadn't asked for extra assistance, had you? A. Well, no, I never."

Plaintiff said he and Hines had their backs to Palmer and Humphreys, and they had their backs to witness; that that was the only way—that they could not face each other under the situation.

"Q. You don't know what caused it to fall? A. No, sir; I don't know, not what caused it to fall. Q. Did you help out (put) that walk across there you were walking on? A. Yes, sir; we laid those 2 by 12's. Q. You people did that, you laid them there, they were right where you put them, and then when you were carrying this timber, first thing you knew it dropped and you were knocked or fell, and you got over on the bank somehow? A. Yes, sir. Q. You didn't get your hand out of the way quite quick enough and the timber bar and the timber came together and struck your thumb? A. Yes, sir."

Burford Humphreys, witness for plaintiff, was in construction work for the railroad. McKenzie, the construction foreman for the road, ordered Palmer, Hines, Bishop, and witness to take the timbers off the top of the tank. They had taken off the short planks which lay across the stringers and had started to remove the stringer. There were other employees there beside the four, but they were busy ditching, preparing to fill the hole around the tank. Witness guesses Mr. Palmer is about 60 years old; had worked with him a month or two; was pretty weak old man as anybody about 60 years of age would be. These four were instructed to remove the timbers. McKenzie told the four to get some 2 by 12's out of a pile of lumber nearby and put across to walk on in carrying the timbers off, and this was done. In removing the stringers we used timber bars four or five feet long. Bishop and Hines manned a timber bar on the east end and witness and Palmer one on the west end. Does not know which direction Palmer was facing, but witness was facing east. After the four picked up the timber and started walking on the wall they had run there and got to the edge of it, they started to step over onto the 2 by 12, and Palmer stumbled and fell and the timber fell and hurt plaintiff.

"Q. You know how, Mr. Humphreys, he happened to fall, did you see him fall at that time? A. No, I don't know how he came to fall. I didn't see anything to stumble on. I just saw him fall and I jumped off on the ground. Q. When you said stumble, that's your surmise of how it happened? A. Yes, sir. Q. You didn't see him stumble? A. I didn't see him stumble on anything; I didn't see anything to stumble on, just being old, I suppose. Q. Just being old and weak? A. I suppose that's it."

Cross-examination:

"Q. Just what did Mr. McKenzie say to you four men? A. When we started working? Q. Yes? A. Well, he told us to take this top off this tank and to take the forms off and so we taken the top off and it was 2 by 12's or 8's, whatever they were; I don't know what size they were. They were on top laying across these stringers; we taken those off and then he told us to carry the stringers. Q. Did you get those 2 by 12's? A. Yes, sir. Q. How did you get the 2 by 12's on the ground? A. We just throwed them; they were short planks. Q. What did he say about taking the stringers off? A. **He told us to lay some kind of runway there and take the stringers off.** He told us to get a timber bar to put under each end and us four men to take them off. Q. He told you to fix a runway to carry these off? A. Yes, sir, he told us to get a 2 by 12 and lay to each end to carry it off. We had already taken these boards off and he told us to get two of them to make a runway to walk on. Q. You and Mr. Bishop and Mr.

Hines and Mr. Palmer made that runway? A. Yes, sir. Q. Did you and Mr. Bishop and Mr. Hines say to Mr. McKenzie that Mr. Palmer is an old weak man and isn't able to carry those? A. No, sir. Q. Didn't say a word about that? A. Well, he had been working on the job, and that's all there was to carry it, wouldn't have done any good, wasn't anybody else to carry, wasn't anybody else for him to get. Q. Then when you picked up this timber, you didn't have any trouble picking it up, did you? A. Well, about 200 pounds to the man, you can guess about what it was. Q. You did pick it up? A. Yes, sir. Q. You were carrying it? A. Yes, sir. * * * Q. Did you tell him that walk way isn't wide enough for us to walk on. He told you gentlemen to build a walk way and get some 2 by 12's. Were there more than one 2 by 12 over there? A. Yes, but he didn't say anything about getting any more. Q. Now, if you, and Mr. Bishop there thought you wasn't safe you had the right to use all the 2 by 12's you wanted, didn't you? * * * A. Well, I suppose we could have only he wanted us to get those timbers off as quick as we could. * * * Q. You never asked for any additional assistance nor Mr. Bishop didn't ask for any additional assistance to carry these timbers? A. Well, he was foreman, I suppose that's the way he wanted them carried off. * * * Q. Did you and Bishop say anything to him (the foreman) about that (that Palmer was weak old man)? A. Not that I heard. * * * Q. Did you hear Mr. Palmer make any protest about his being able to do that? A. No, sir."

Mr. Palmer was present at the trial, but was not called as a witness. Defendant introduced no evidence, but when plaintiff rested, demurred to the evidence of plaintiff, and when same was overruled moved for a directed verdict, which was also refused, and from a verdict and judgment for plaintiff, defendant appeals.

While several assignments of error are argued, we think that the one directed at the sufficiency of the evidence is determinative.

Is there any actionable negligence on the part of defendant shown by this evidence? The evidence, without dispute, shows that these employees, including plaintiff, were mature men, who had for sometime been working on the erection of the tank in question and the construction of a foundation for a building; that plaintiff was not only a laborer, but was also a carpenter. They were ordered to remove from the top of the tank two certain stringers and the boards thereon, and to carry this out they were directed to provide themselves out of the lumber at hand some sort of walk way upon which to pass from the tank proper over to

the surface of the ground. It does not appear from the evidence that the foreman told these employees just where to place these 2 by 12's upon which they were to walk in going from the tank over to the ground, except, perhaps, that one should be put at each corner of the tank. It is also shown that there were plenty of 2 by 12's accessible, if they wished a wider walk way, and it is clear, we think, beyond question, that these four men chose to, and did, place the ends of the 2 by 12's resting on the tank, not at the corners of such tank, but about 14 inches therefrom. Would it be reasonable to say that it was negligence on the part of the defendant not to see to it that the ends of these planks were put and kept actually at the corners? The employees were informed as to the purpose of putting them there and they knew the use to which they were to be put. This evidence does not disclose any direction given by the foreman as to where they should walk as they bore the stringers from the place where they lay to the corners of the tank; but the evidence indicates that two of these men put their timber bar under the east end and the other two put their timber bar under the west end of this particular stringer, and that they walked along the concrete wall without trouble until they got near to or at the corner. If there were any danger whatever to these men in walking with their burden along the concrete wall, it must have been just as open and obvious to them as it could have been to defendant.

It might be well to inquire just how the accident occurred, and in the language of the witnesses it may be described by quoting therefrom as follows:

"Q. All right, tell the jury whether or not you had your face toward Mr. Palmer and Mr. Humphreys or in the other direction? A. No, we were facing the east. Q. Could you see them? A. No, sir; we couldn't see them. Q. Then what happened? A. Well, we all started out; when we got to this corner where we had to step back, the first thing I knowed this timber fell down and caught me, my hand under it and the timber bar."

On cross-examination he testified further:

"Q. You don't know what caused it to fall? A. No, sir; I don't know, not what caused it to fall."

The only other witness who testified with respect to this matter used the following language in describing the accident:

"A. Well, we started walking on this walk they had run there, and we got out to the edge of it, about four or five feet we had

to go, I think; we got to the edge of the runways we had out there, 2 by 12's, and started to step over on it and he stumbled and fell and got over on it, and this timber came down and knocked this other fellow off and fell on top of him. Q. You know how, Mr. Humphreys, he happened to fall, did you see him fall at that time? A. No, I don't know how he came to fall. I didn't see anything to stumble on. I just saw him fall and I jumped off on the ground. Q. When you said stumble, that's your surmise of how it happened? A. Yes, sir. Q. You didn't see him stumble? A. I didn't see him stumble on anything; I didn't see anything to stumble on, just being old I suppose."

The cases are legion in this state that negligence must be shown by evidence; proof of injury is not proof of negligence. The evidence to justify a finding of negligence should show a breach of duty on the part of defendant, such as a reasonable person should have foreseen would as a natural consequence cause an injury. Jenkins v. Davis, 111 Okla. 191, 239 Pac. 135; St. L. & S. F. Ry. Co. v. Davis, 37 Okla. 340, 132 Pac. 337: Lusk v. White, 58 Okla. 773, 161 Pac. 541; C., R. I. & P. Ry. Co. v. Watson, 36 Okla. 1, 127 Pac. 693.

Could it be contended that the defendant did not furnish the plaintiff a safe place in which to work? These employees were engaged in removing a platform from the top of the tank. There was a constant change in the place due to their own labors in removing the parts of this structure. They were really dismantling the "place," and the same became less safe as they proceeded to remove the boards from the stringers, for this made it possible for one to fall into the tank. But the nature of the work that they were engaged in and their experience made it clear that they were not engaged in a perfectly safe business. The man who puts a roof on a house or paints a dwelling, or builds a chimney, is not engaged in a safe business, for he may fall, but, as we see it, there was nothing which the defendant did which made it unsafe, nor was any omission of defendant responsible for making the place more hazardous. These men had been accustomed to walk on the wall as shown by the evidence. They helped construct the very wall upon which they were walking: they laid the planks across the stringers and they placed the 2 by 12's. The following question is found in the record (addressed to plaintiff):

"Q. Did you help put that walk across there you were walking on? A. Yes, sir; we laid those 2 by 12's."

And on cross-examination:

"Q. What did he say about taking the stringers off. A. He told us to lay some kind of runway there and take the stringers off. He told us to get a timber bar to put under each end and us four men to take them off. * * * Q. Did you tell him that walk way isn't wide enough for us to walk on? He told you gentlemen to build a walk way and get some 2 by 12's. Were there more than one 2 by 12 over there? A. Yes, but he didn't say anything about getting any more. Q. Now, if you and Mr. Bishop there thought you wasn't safe you had the right to use all the 2 by 12's you wanted, didn't you? * * * A. Well, I suppose we could have, only he wanted us to get those timbers off as quick as we could."

What, then, has the defendant done which it ought not to have done? There is no complaint that there was a shortage of fit material. The complaint seems to be that the employees did not correctly place the 2 by 12's. That should not inure to the benefit of one whose wrong created the situation. The legal presumption is that these men were competent to do the very work t'at they professed and undertook to do. It would seem too great a burden to require the defendant to direct not only just where fit material could be gotten to make a simple walk way, but also to require him to know just where each plank should be laid at the hazard of being held accountable by those who have misplaced the material. The employment of plaintiff carried with it the use of his prudent judgment and intelligence as a carpenter, and he was paid to give the defendant the benefit of that intelligence in the prosecution of this particular work. Moreover, there is nothing to account for this accident. The only witness who presumes to know, but who did not, surmises that this elderly workman stumbled and fell, but he says he did not see him stumble and that there was nothing to stumble over, and he simply surmises that he stumbled and fell becasue he was an old man.

Can it be argued with force that defendant failed to warn plaintiff of a danger which was as open and apparent as the one to which the plaintiff was subjected? The plaintiff was not an infant and was not inexperienced. A carpenter could hardly be inexperienced in such line of work.

A further contention is made that sufficient men were not furnished to do this particular work. The evidence shows that these four men picked up without difficulty and walked off with the stringer. There is no showing that Palmer was not able to lift or

to carry his part of this load, other than the vague surmise of the witness whose answer has been disclosed above, in saying that he could not account for the accident otherwise. The evidence is positive that these four men could have properly handled the load on the ground. This should dispose of any contention that the old man was weak. Moreover, these men did not call for additional help; they knew their ability better than the master knew it. If they undertook a piece of work that was beyond their strength, common fairness would have required that the master be notified in order that he might remedy the defect, if such existed, but there is no showing and no attempt to show that such was demanded.

Again complaint is made that servants with sufficient strength and skill were not furnished. There is no evidence of lack of skill. A 60-year old man is often amply able to perform the duties incident to building operations with reasonable safety to himself and to others. We think the court cannot afford to hold that the employment of a man 60 years old, even where hard labor is required, is evidence of negligence. Common observation would repel this contention. Many men of this age are amply able to take care of jobs requiring endurance and strength.

It is finally argued that negligence of Tom Palmer is responsible for the accident. Unless the falling of the timber itself is proof of negligence of defendant, we do not find any within the record. No one seems to know exactly how the accident occurred. We have already quoted the evidence in regard to the accident. Why it happened is not made clear. The only eyewitness who is presumed to know simply surmised that Palmer stumbled, and further surmised that he did this because he was too weak for work.

The res ipsa loquitur doctrine does not apply in this case. M., O. & G. v. West, 50 Okla. 521, 151 Pac. 212. It is the rule in this state that verdicts should not be arrived at through guesswork or surmise, and while negligence may be shown by circumstantial evidence, there must be evidence either direct or circumstantial reasonably tending to show that the defendant has been guilty of some breach of duty towards the plaintiff which has resulted in his injury.

Our holding is substantially supported by the following cases: C., R. I. & P. Ry. Co. v. West, 124 Okla. 147, 254 Pac. 91; St. L.-S. F. Ry. Co. v. Milburn, 106 Okla. 80, 232 Pac. 930; Rihmann v. Geo. J. Grant Construction Co. (Minn.) 131 N. W. 478; Jennings v. Iron Bay Co. (Minn.) 49 N. W. 685; Gulf, C. & S. F. Ry. Co. v. Jackson (C. C. A.) 65 Fed. 48; Carlson v. Railway Co., 21 Ore. 450, 28 Pac. 497; Armour v. Hahn, 111 U. S. 213, 4 Sup. Ct. 433; A., T. & S. F. Ry. Co. v. Schroeder (Kan.) 27 Pac. 965; Wormell v. Ry. Co., 79 Me. 397, 10 Atl. 49; Crutchfield v. R. R. Co., 78 N. C. 300; Stephenson v. Duncan, 73 Wis. 404, 41 N. W. 337; Smith v. R. R. Co., 42 Minn. 87, 43 N. W. 968; McGlynn v. Brodie, 31 Cal. 376; Southern Kansas Ry. Co. v. Drake, 35 Kan. 825.

Several of the foregoing cases deal with the question of negligence arising out of the handling of steel rails, etc., and a dropping of the burden from some cause or other by some one helping to carry the same. Some of the cases deal with the question of negligence under the circumstances named where it was alleged that insufficient employees were furnished, or insufficient light provided, or that obstructions lay in the way of those carrying the burden, and two of the cases from Minnesota deal with the question as to the master's duty with reference to placing or keeping in proper place planks or boards used by employees as a walk way.

From a study of the entire record in the light of the principles of law applicable thereto, we fail to find any evidence of actionable or primary negligence on the part of the defendant sufficient to sustain the verdict and the judgment thereon, and for which reason we hold that the overruling of the demurrer to the evidence and the refusal to sustain the defendant's motion for an instructed verdict was error, for which reason the judgment of the trial court is reversed and the cause is remanded, with directions to dismiss plaintiff's action.

TEEHEE, HERR, HALL, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.