## INDEPENDENT TORPEDO CO. v. CARDER.

No. 21081.   Sept. 19, 1933.

Yancey, Spillers & Fist, for plaintiff in error.

Newton & Pinson, for defendant in error.

OSBORN, J. This action was commenced in the county court of Wagoner county by the Independent Torpedo Company, a corporation, against A. E. Carder for a balance due on open account for nitroglycerin, placed and exploded in a certain oil well of the defendant at his oral request.

Defendant filed a counterclaim alleging damages against plaintiff on account of negligence in exploding the shot of nitroglycerin, causing the casing in the well to collapse. Defendant introduced a bill of expense in the sum of $976.05 for repairing the damage caused by the shot. Plaintiff's claim was for $250. Upon a trial of the cause, the jury rendered a verdict for defendant in the sum of $726.05, from which plaintiff has appealed. The parties will be referred to as they appeared in the trial court.

Among other assignments of error, plaintiff contends that the trial court erred in

overruling its demurrer to defendant's evidence, for the reason that there was no showing of negligence on the part of plaintiff which was the proximate cause of the damage complained of.

The essential averments of defendant's answer and counterclaim are as follows:

"And for further answer and counterclaim against plaintiff, defendant alleges that on or about the ____ day of _____, 1924, the defendant herein engaged the said plaintiff, the Independent Torpedo Company, by oral contract, to shoot an oil well; said well being Well No. 1 Beard, located on the southwest corner of the northeast quarter of section 25, township 18 N., range 15 E., Wagoner county, Okla.

"That said plaintiff represented to said defendant that they were engaged in the business of shooting oil wells; that they were experienced in the shooting of oil wells and that their employees were experienced, careful and competent to take charge of and shoot a well.

"That the said defendant believing said representations and relying thereon, the said defendant engaged said plaintiff to shoot said well and said plaintiff agreed so to do.

"That on or about the ____ day of ____, 1924, the said plaintiff in accordance with said agreement appeared at the well as above described and advised said defendant that they had come to shoot said well. That before permitting said plaintiff to proceed to shoot said well the said defendant advised the said plaintiff of the true condition of said well and asked said plaintiff if under the existing circumstances said plaintiff could shoot said well without doing damage to the well and the casing therein. That said plaintiff then and there advised said defendant that said well was in good condition for the shot and that they could shoot same without doing damage to well or the casing therein; whereupon said plaintiff proceeded to and did shoot said well.

"That notwithstanding the assurance of said plaintiff that they could shoot said well without doing damage to the well or casing therein, the said plaintiff by and through carelessness, negligence and incompetency did cause great damage to said well and casing therein thereby rendering said well worthless for the production of oil and greatly damaging the casing therein. * * *"

Defendant alleged that the amount of the damage was $1,000, and asked that his counterclaim be set off against plaintiff's claim and that he have judgment for the sum of $750.

In support of said counterclaim, defend-

ant was allowed to testify, over the objection of plaintiff, that he called the plaintiff company by telephone and had a conversation with some party, whose name he did not know, in which he described the condition of the well, and was informed by said party that they could safely shoot the well. Clearly, the trial court erred in the admission of this testimony. In order for the statement of an agent to be binding on his principal, the fact of agency must first be established. and it must be shown that said agent is acting within the scope of his authority and employment. Pierce Oil Corporation v. Myers, 117 Okla. 161, 245 P. 863.

Defendant further testified that, pursuant to said telephone conversation, one Mr. Kover, an employee of plaintiff, came to the well; that he had no conversation with said employee at that time, but that said Kover immediately proceeded to shoot the well; that the modus operandi consisted of placing the nitroglycerin in a shell eight or nine feet long, and lowering it to the bottom of the well. A jack squib was then prepared by using a tin tube about five feet long, a little sand was placed at the bottom of the tube, then a stick of dynamite with two caps and a fuse, and it was then filled to the top with sand and stiff mud, the top was crimped, the fuse lighted and the jack squib dropped into the well.

Defendant testified that the explosion was premature, in that it occurred about six or seven seconds after the squib was dropped and collapsed three joints of casing at the bottom of the well, which resulted in an expense to him of $976.05 in repairing the damage. He did not claim any permanent damage to the well.

We find no recital in defendant's direct testimony of any act of carelessness or negligence on the part of plaintiff's employee in setting off the shot. The following appears in his cross-examination:

"Q. What did Mr. Kover do there in any way that indicated to you that he was reckless or negligent? A. I don't know, the only charge I make is that the shot went off prematurely."

Sam Webb, the only other witness offered by defendant, stated that he was a driller, employed by defendant at the well in question at the time the well was shot. After describing the condition of the well, he testified as follows:

"Q. When the shooter, Mr. Kover, came, what conversation was had between you

and him about shooting the well? A. He said he could shoot the well without any damage to it. Q. Did you advise him the depth of the sand and where the casing was set? A. Yes, I told him. Q. Now, the talk was had there between you, Dr. Carder, and Mr. Kover as to the possibility of the damage that might be done to the well? A. There might have been something said as to the amount of damage, but the conversation was whether it was safe or not. Q. After that talk, what did Mr. Kover say? A. He said he didn't think there was any danger. Q. What was it that blew up the casing and damaged the well? A. The jack that Mr. Kover dropped in the well exploded before it reached the bottom of the well."

This court has previously passed upon three cases involving premature nitroglycerin explosions. In the case of Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 P. 419, and Eastern Torpedo of Ohio Co. v. Shelts, 121 Okla. 129, 247 P. 974, the following rule, which is pertinent herein, was announced:

"Neither conjecture nor speculation forms a reasonable basis for arriving at a verdict in a case where recovery is sought upon the alleged negligence of the defendant, but there must be evidence reasonably tending to show that defendant was guilty of some one of the negligent acts charged and that such negligence was the proximate cause of the injury."

Under the evidence adduced by defendant the only theory upon which he can recover is based upon a premature explosion of the jack squib. The record not only fails to disclose any act of negligence on the part of plaintiff which would cause said premature explosion, but the reason therefor was neither assigned nor suggested. The facts in the cases above cited are similar to the facts in the instant case. In the above cases, certain specific acts of negligence, which would tend to account for the premature explosion of the jack squib, were related by the witnesses, but the court found said evidence to be insufficient to prove negligence against the defendants therein, for the reason that it was not positively shown that they were guilty of any of said acts of negligence.

In the instant case, the field of speculation and conjecture is more enlarged than in those cases above cited.

Defendant advances the proposition that there was an implied covenant or contract as well as an oral assurance on the part of plaintiff that the well would be safely shot. As we have heretofore pointed out, the only competent evidence of such assurance was the statement contained in the testimony of Sam Webb that Mr. Kover, plaintiff's employee, told them that he could shoot the well without damage and that he did not think there was any danger. Bearing in mind that the sole cause of the damage was the premature explosion of the jack squib, which was neither explained nor anticipated, the statements of Kover amount to no more than mere expressions of opinion.

The case of Jackson v. Central Torpedo Co., 117 Okla. 245, 246 P. 426, is somewhat similar as to facts. We find the following rule announced therein:

"One who undertakes, pursuant to an oral agreement, 'to shoot' an oil well by the use of nitroglycerin for another comes into such a relation to the owner of the well that he may be held liable in tort, in case he performs the services incumbent upon him by reason of such agreement in so negligent a manner as to damage or destroy the oil well.

"Where the transaction complained of had its origin in a contract, which places the parties in such a relation that in attempting to perform the promised service the tort was committed, then the breach of the contract is not the gravamen of the action. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action 'ex delicto', and not an action 'ex contractu'."

Any recovery by defendant on his counterclaim would have to be sustained on account of plaintiff's negligence. The burden of proof is on the defendant, not only to show negligence, but to prove that such negligence was the proximate cause of the injury. Star v. Brumley, 129 Okla. 134, 263 P. 1086; Pittsburg County Ry. Co. v. Hasty, 106 Okla. 65, 233 P. 218; Chicago, R. I. & P. Ry. Co. v. West, 124 Okla. 147, 254 P. 91; Midland Valley Ry. Co. v. Kellogg, 106 Okla. 237, 233 P. 716; Davis v. Lawson, 118 Okla. 94, 246 P. 853; St. Louis & S. F. Ry. Co. v. Davis, 37 Okla. 340, 132 P. 337.

Since defendant has wholly failed to sustain said burden of proof, the trial court erred in overruling plaintiff's demurrer to the evidence.

Having taken this view of the matter, it is unnecessary to consider the other assignments of error submitted by plaintiff.

The cause is reversed, with directions to the trial court to enter judgment for plain-

tiff in accordance with the prayer of its first amended petition.

RILEY, C. J., and SWINDALL, Mc-NEILL, BAYLESS, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS and WELCH, JJ., absent.