## HALBACH v. PARKHILL TRUCK CO. et al.

No. 23656. Nov. 20, 1934.

G. C. Abernathy, Edward Howell, and Kenneth Abernathy, for plaintiff in error.

Arrington & Evans and John F. Butler, for defendants in error.

SWINDALL, J. This is an action for damages brought by Saleeta F. Halbach, for herself, as the widow, and as next friend for her minor son, seeking to recover from the defendants, Parkhill Truck Company, a corporation, for the death of her husband. The plaintiff alleged, in substance, that she and her minor son were the only surviving heirs of R. E. Halbach, deceased; that, on or about the 13th day of August, 1928, defendant, Independent Oil & Gas Company had caused a house to be moved along the highway leading from Earlsboro to the town of Maud, and that the defendant Parkhill Truck Company was employed to use its truck in so moving said house; that, in moving the house over a bridge about two and one-half miles south of Earlsboro, the defendants removed a banister from the east side of the bridge and negligently failed to replace same, and that, about nine o'clock on the same night, R. E. Halbach attempted to drive his automobile over and across the said bridge, without negligence on his part, and, on account of the banister having been removed by defendants, drove his automobile over the east side of said bridge, and was thereby instantly killed.

Plaintiff further alleged that the removal of said banister or bridge was in violation of section 2226, C. O. S. 1921 (sec. 2328, O. S. 1931), and the said petition contained other allegations as to age, earning capacity, etc., of the deceased, and prayed for $50,000 damages.

After some preliminary pleadings, the defendants separately answered, denying all the allegations contained in the petition except their corporate existence, and further alleging that if the deceased met his death, as stated in plaintiff's petition, that said deceased was guilty of carelessness and negligence and without any fault on the part of the defendants. A detailed statement of these allegations is unnecessary in determining the merits of this appeal.

The affirmative matter in said answer was denied by plaintiff, and the case proceeded to trial before a jury. At the close of plaintiff's evidence, each of the defendants interposed a demurrer to the evidence, which demurrer was by the court sustained and the cause dismissed at plaintiff's costs. Plaintiff duly excepted and has brought the case to this court on appeal. The parties will be referred to as plaintiff and defendants, as in the lower court.

The sole question raised by plaintiff is that the trial court erred in sustaining the demurrer to the evidence of plaintiff. Aside from the testimony of the widow and her mother, who testified only as to the family

relation of plaintiff, deceased's earning capacity, etc., plaintiff produced five witnesses.

The first witness, one L. A. Wilkes, testified in substance that on the 13th of August, 1928, he was in the garage business at Earlsboro, and between 2:00 and 4:00 o'clock in the afternoon of said day made a trip from Earlsboro to Maud, and that, about a mile south of Earlsboro, he passed a truck belonging to the defendant Parkhill Truck Company, with the name of said company on the cab door, and that he saw one employee of the defendant Independent Oil & Gas Company, "along with the truck"; that he did not know the name of either the driver of the truck or the employee of the Independent Oil & Gas Company; that the house was moving south from the direction of Earlsboro toward Maud, and about a quarter of a mile from the bridge where the accident later occurred; that the house was being transported on 60-foot drill stems, swung between the truck and a trailer; that he passed on by, driving at the rate of about 10 or 15 miles per hour, and crossed on over the bridge which sat at an angle in the road instead of directly north and south, as the road ran; that the bridge was about 12 feet wide and he estimated the width of the house in one place at 15 or 16 feet; at another place he described the house as being approximately 12 by 28 feet; that he had observed the house before it was moved and knew the location it was moved from. This witness further testified that when he passed over the bridge just after having passed the house both of the banisters were on the bridge; that the bottom of the house was about two and one-half feet above the ground or floor of the bridge and that the banisters were about three feet high; that he came back over this same road about 9:00 or 9:30 that night, going north towards Earlsboro, and that the banister on the east side of the bridge was laying flat on the bridge; that an automobile was in the creek on the east side of the bridge and partly under the bridge; that he afterwards got the automobile out of the creek and took it to his garage in Earlsboro.

The testimony of the next two witnesses is of very little, if any, probative force. They were apparently strangers in the community and merely testified that on the afternoon of August 13, 1928, they left Earlsboro about 5:45 in the afternoon and drove south through Maud; that they noticed a bridge bearing the general description of the bridge where the accident occurred south of Earlsboro with the railing down on the left side as they went south, and at Ardmore the next day they heard of an accident on that road.

The witness V. H. Nadeau resided about 100 yards from the road and about 150 yards from the bridge where the accident occurred. He estimated the width of the bridge at 14 feet; stated that on the day of the accident he had been to Shawnee and returned home at 4:00 o'clock in the afternoon, and that as he crossed the bridge where the accident occurred the banisters were intact on both sides; that about 4:30 or 5:30 in the afternoon he was at his house and heard a noise down at the bridge like breaking timbers, and he looked up at the bridge and saw a house or a truck coming from the south going north. He does not testify that he went to the bridge or learned what caused the sound of breaking timbers, but testifies further that between 8:00 and 9:00 o'clock that night there was an automobile wreck at the bridge and he went down at that time and found an automobile laying in the ditch or creek, up side down, and with the deceased, Halbach, dead under the car. Apparently the witness was not the first one at the scene of the accident, but helped get the dead body out from under the automobile and carry it up on the bank, where it was taken away in an ambulance.

The witness W. J. Roady testified that he lived at a small place named Harjo, between Earlsboro and Maud, and on the 13th day of August, 1928, passed over this road several times during the day; that between 12:00 and 2:00 o'clock in the afternoon, at the bridge where the accident occurred, he came upon a house being moved on a truck; the house was moving from the north to the south, in the direction of the town of Maud; that he could see the house from a quarter to a half mile before he got to the bridge and it was pulling up pretty close to the bridge and was on the bridge by the time he got there, and he had to wait 15 or 20 minutes until they got the house and truck across the bridge; that some of the men with the house had a jack and some crowbars, working at the back of the house, apparently sliding the house or the trailer west; that he did not see any banister taken down or knocked down; that he was the first one across the bridge after the house was taken over, and that he saw nothing wrong with the banisters at that time; that he came back over that same bridge about 6:00 o'clock that evening, going north, and

he noticed that a post to the banister on the east side next to the north end was "hanging down"; that the end of the bansiter on the north end was down on the bridge, but the other end was apparently attached to the next post to the south; that later the same night, about dark, he approached the bridge from the north, going south, driving a Model T Ford truck at the rate of about 15 or 20 miles an hour; that an automobile passed him going south about three quarters of a mile north of the bridge; that he did not see the automobile go over the bridge or hear the crash, but when he arrived at the bridge this same automobile was in the bottom of the creek bed, up side down, and the deceased, R. E. Halbach, was under the car dead, and some other men were there lifting the car so that the body could be removed.

Neither the witness Roady nor Nadeau identified the truck which they saw moving a house at the bridge as the truck of either of the defendants, and neither of these witnesses testified to seeing any employee of either defendant about the truck or house. The witness Wilkes is the only witness who identified the truck as bearing the name of the defendant, Parkhill Truck Company, or seeing employees of either of the defendants there. This witness fixed the time when he saw the truck and house approaching at about a quarter of a mile of the bridge as between 2:00 and 4:00 o'clock, and stated that the house and truck were going from the north, south toward the bridge. Witness Roady saw the unidentified truck and house at the bridge, but fixed the time between 12:00 and 2:00 o'clock. Even if we assume that the truck and house referred to by the witnesses Wilkes and Roady was one and the same house and truck, we find no evidence that this truck and house caused any damage to the bridge or that the employees of either of the defendants removed or damaged the rail or banister to the bridge.

Counsel for plaintiff in their brief seem to take the position that such damage to the bridge and negligence on the part of defendants may be inferred from the fact that the witness Wilkes in one place estimated the house to be between 15 and 16 feet wide, and the bridge to be 12 feet wide, and that the bottom of the house was within two and one-half feet from the ground and the banisters were about three feet high, and this seems to be the strongest evidence that plaintiff has to rely on. There

were apparently no eyewitnesses to the accident, and there is no testimony or other evidence to the effect that the removal or absence of the banister or railing from the east side was the proximate cause of deceased's accident and death. The witness Roady was the only witness produced who saw the house moved across the bridge, and he states that he did not see anyone with the truck or house remove or damage the banister and did not see the banister broken down or displaced when he crossed the bridge immediately following the house and truck, but did notice one end of the banister down when he returned over the bridge about six o'clock.

Plaintiff further takes the position that the testimony of Nadeau that he heard a noise as of breaking timbers at the bridge supports her contention, but such is not the case, as Nadeau testified that the truck and house he saw at the bridge were traveling from the south, going north, between 4:30 and 5:30 o'clock. In order to connect this with defendants' truck and house, we would have to assume that the truck and house were moved back over the same road on the same afternoon, and there is no evidence whatever to that effect. The only truck identified as belonging to either of the defendants was going from the north to the south, exactly the opposite direction from the truck and house observed by the witness Nadeau.

The plaintiff insists further that on a demurrer to the evidence in a law action the court can not weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrant. This is a correct rule of law, but only applies to conflicting evidence. Harrell v. London, 129 Okla. 240, 264 P. 172. And the evidence of Nadeau and Roady cannot be said to be in conflict with the testimony of witness Wilkes. Nadeau's testimony was evidently in regard to a different truck and house altogether, and Roady's testimony is not in conflict with Wilkes' testimony, because Wilkes made no claim that he saw the house moved over the bridge, and Roady testifies that he waited there 15 or 20 minutes while the house was being moved across the bridge. It is not made clear whether the jack referred to was used to elevate the house above the banister or whether the bridge was wide enough for the house to pass, but the only witness produced who saw the house and truck moved across the bridge testified that he saw no banister removed and saw no defect in the banisters

when he crossed the bridge immediately thereafter.

The burden was on the plaintiff to establish, by competent evidence: (1) That defendant had a duty to protect the plaintiff from injury; (2) failure of defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure. Of course the defendants, as well as all other persons using the road and bridge, had a duty to all other persons to use said road and bridge in such manner as not to damage same and leave it in a defective condition, dangerous to other persons using the same. Plaintiff has, however, wholly failed by any competent testimony to show the failure of defendant to perform that duty, and has wholly failed to show that any injury to plaintiff resulted from any wrongful act or negligence of defendant. This court has held that:

"The burden is upon the plaintiff in an action to recover damages for an injury caused by alleged negligence to show the existence of the negligence, and that the negligence was the proximate cause of the injury." A., T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. (2d) 908.

And in the same case this court said:

"A demurrer to the plaintiff's evidence in a personal injury action ought to be sustained unless it is reasonably apparent from the evidence that the injury sustained by the plaintiff was caused by some wrongful act of the defendant in violation of a legal duty owing to the plaintiff."

And, again:

"Where there is no evidence reasonably tending to show that the defendant was guilty of negligence, it is error for the trial court to submit that issue to the jury."

This court has also held:

"A demurrer to plaintiff's evidence in a personal injury action ought to be sustained unless it is reasonably apparent that the injury suffered by the plaintiff is the casual effect from some wrongful act of the defendant in violation of a legal duty owing to the plaintiff." G., C. & S. F. Ry. Co. v. Nail, 156 Okla. 294, 10 P. (2d) 668; City of Tulsa v Harman, 148 Okla. 117, 299 P. 462.

The rule has also been stated as follows:

"Where the evidence as a whole. and all the inferences that can properly be drawn from it, is insufficient to support a judgment in favor of the plaintiff, it is not error to sustain a demurrer thereto." Duncan v. Keechi Oil & Gas Co. et al.. 75 Okla. 98, 181 P. 709; Remarks et al v. Reid, 64 Okla. 104, 166 P. 728; Burton v. Doyle, 65 Okla. 126, 165 P. 169; Toomey v. Sporn, 145 Okla. 38, 291 P. 22.

"Neither conjecture nor speculation forms a reasonable basis for arriving at a verdict on a case where recovery is sought upon alleged negligence, but there must be evidence reasonably tending to show some act of negligence and that such negligence was the proximate cause of the injury." Independent Torpedo Co. v. Carder, 165 Okla. 87, 25 P. (2d) 62; Eastern Torpedo of Ohio Co. v. Shelts, 121 Okla. 129, 247 P. 974.

Under the testimony in this case, only by conjecture and speculation could a court or jury arrive at the conclusion that defendants tore down or removed the banisters on this bridge or that any acts of defendants were the proximate cause of the injury to and death of the deceased, R. E. Halbach, and, in view of the testimony of the witness who saw the house and truck moved over the bridge, a most violent conjecture and wild speculation would be required to arrive at such conclusion.

In the case of Schaff v. Ferry, 105 Okla. 259, 232 P. 407, it was said:

"In an action for damages for wrongful death, the negligence alleged may be established by circumstantial evidence, but the circumstances must be proved and not themselves presumed."

In that case it was alleged that the brakeman on a train fell to his death on account of defective condition of a brake, but the evidence did not disclose that he had touched the brake, and the court in the body of the opinion said:

"In finding as the jury did a causal relation between the defective brake and the death, the jury indulged the inference that deceased, being on top of the car, went to the brake and attempted to operate same. There is nothing to base this inference on except the said legitimate inference that deceased was on top of the car, and, being an inference upon an inference, was not permissible. One might as well infer that deceased, being on top of said car. fell headlong by accident or from his own physical infirmity or from other cause, without even touching said hand brake, thus involving the assumption of risk, for which the defendant would not be liable. Thus, the immediate or proximate cause of death was a matter of guess, conjecture, or speculation. The death could have been caused. as alleged, but it was for the plaintiff to show by some evidence not that it might have so transpired, but that it did so transpire."

Finding no evidence which in the slightest degree tends to prove negligence of the defendants, and being unable reasonably and

logically to draw from the evidence any inferences or conclusions which sustain plaintiff's cause of action, we find that there was no error in the action of the trial judge in sustaining the demurrer to the evidence, and the judgment is affirmed.

RILEY, C. J., CULLISON, V. C. J., and McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. ANDREWS, J., absent.