## BOLEND v. ROGERS, Sheriff.

No. 25367.   May 21, 1935.

Rehearing Denied June 25, 1935.

Darrough & Foster, for plaintiff in error.

Everest, McKenzie & Gibbens, for defendant in error.

PER CURIAM. In this action plaintiff in error sought to enjoin the defendant in error, as sheriff of Oklahoma county, from proceeding with the sale under execution of a five-acre tract of land. A restraining order was issued. Upon final hearing, the issues were found generally for the defendant, and judgment was rendered dissolving the restraining order and denying a permanent injunction. The plaintiff below appealed.

The record before us discloses that in October, 1927, one T. R. Upshaw, having contracted to purchase a 20-acre tract from one Bourne, agreed with Dr. Bolend, the plaintiff in this cause, to sell him five acres therein. The vendor gave a written memorandum of the sale in the form of a letter signed by him, which, after specifically describing the five acres sold and acknowledging receipt of a part of the purchase price, provided:

"Total purchase price to be $1,525, payable in accordance with ¼ my purchase of the 20 acres including the above, copy of such contract filed with the register of deeds of Oklahoma county; your payments to be $400 January 2, 1928, and $125 each succeeding six months until paid.

"It is also understood by mutual agreement that we can change your purchase from this description to any other five acres in the tract."

About the same time (the exact date is not shown), in order to secure the unpaid part of the purchase price for the 20 acres purchased by him, Upshaw gave a mortgage to Bourne upon 15 of the 20 acres, which mortgage covered the five acres specifically described in the memorandum of sale to Dr. Bolend. In January, 1931, suit was commenced by Bourne against Upshaw for the foreclosure of this mortgage, and Dr. Bolend was made a party defendant—no money judgment being sought against him, but for the purpose of foreclosing any interest he had in the land covered by the mortgage. An answer was filed in that action on behalf of Dr. Bolend, by his attorneys, in which it was alleged that he was "entitled to a five-acre interest in and to the property described in said petition, and is entitled to have his five acres set aside to him free and clear of all liens or incumbrances of any nature whatsoever," and prayed, "that he have an order directing the court to set aside five acres from the property described in plaintiff's petition to this answering defendant and that title therein be quieted."

On September 8, 1931, a judgment was rendered in the foreclosure action for the plaintiff and against Upshaw for the sum of $4,228.31, with interest, attorney fees and costs, and a foreclosure of the mortgage was decreed, barring and foreclosing all rights and interests which the defendant Bolend, as well as the defendant Upshaw, might have in the land involved in that action. On April 15, 1932, the mortgaged property was sold pursuant to the decree of foreclosure, and the proceeds credited upon the judgment, leaving a balance unpaid thereon, alleged by the plaintiff below to be $1,266.85, with interest. Thereafter Bourne caused an execution to be issued upon the judgment for the deficiency, which, on May 27, 1932, was levied by the defendant in this action upon the five-acre tract which was not embraced within the mortgage, but which was a part of the 20 acres originally purchased by Upshaw from Bourne.

The plaintiff claims that prior to the judgment entered in the foreclosure action, an

oral agreement was made between him and Upshaw, whereby the five acres levied upon by the sheriff and involved in this case were substituted for the five acres specifically described in the memorandum of sale given by Upshaw to Dr. Bolend.

The defendant, besides other defenses, denied that plaintiff was the owner of the property either on or before the date of the levy of the execution.

With regard to the alleged oral agreement, Upshaw testified by deposition that this agreement was made shortly before he left Oklahoma to reside in Mississippi, on November 14, 1930. He swore:

"When I bought the land, I cleared five acres and gave a mortgage on 15 and promised to sell Rex the five acres. I was going to build a house on one five acres, and then when I got mixed up and couldn't pay it out, Rex called me up one night and wanted to know how he was going to get his land. * * *

"Rex called me up one night and wanted to know how he was going to get his land if they took the 15 acres on which I had given the mortgage and in which the five acres which I was selling him was included. He said 'let's get a lawyer and get it fixed up.' I said it wasn't necessary to get a lawyer, I would give him a deed to the five acres that were clear any time he wanted it."

He further testified that no demand was made by Bolend upon him for a deed until about June 23, 1932, when a quitclaim deed was executed by him, conveying the land to Bolend.

Plaintiff testified that in the summer or spring of 1930, it was decided to "change from the description in the letter to the other piece of land." On cross-examination, he testified that he had told one of the attorneys for the mortgagee, prior to the foreclosure:

"That I was paying Upshaw this money and I had paid mine up to date and he hadn't paid his, and therefore I had some interest in this and I considered I practically owned mine and by agreement with Roger Upshaw that he had that five acres clear and he said 'that five acres will protect you, and if they take the other I will deed the five acres to you'; that was the understanding that the five acres he had clear would be given to me."

He further admitted that on several occasions he called upon Mr. Gibbens, who was handling the note and mortgage for Bourne before the foreclosure proceedings

were filed; he admitted that he procured, through Mr. Gibbens, a delay of the foreclosure for the purpose of trying to do something to save his interest in the 15 acres. He did not know whether his attorney, Mr. Foster, had filed an answer for him in that cause, but did know that the case went to judgment, and the property was advertised for sale. He admitted that he never asked for a deed from Upshaw for the five-acre tract until after the judgment in the foreclosure proceedings. Mr. Gibbens, one of the attorneys for the plaintiff in the foreclosure proceeding, testified that on several occasions plaintiff, Bolend, came to his office, and he talked to him once or twice over the phone while witness was handling the matter. He said that Dr. Bolend did not at any time advise him that he was claiming any interest in the five-acre tract not included in the mortgage, but that he at all times claimed a five-acre interest in the land embraced in the mortgage. It was Bolend's plan, in the beginning, according to this witness, to purchase the mortgage to protect his interest, and witness held up the foreclosure proceedings in order that he might have time to raise the money for that purpose. After the suit was instituted Bolend advised witness that he had endeavored to protect himself and would do so at the time of the sheriff's sale; that he felt it was bad policy to buy the mortgage prior to that time on account of his friendship for Upshaw. Most of these conversations were in the fall of 1930, but witness stated that he had conversations with Bolend up to the time he brought the suit. Witness admitted receiving a letter from the attorneys for Bolend, enclosing a copy of the answer filed for Bolend, written the day the same was filed, which letter advised that Bolend had some interest in the property in suit, as to the exact nature of which they were not informed, but that the "rather indefinite answer" was being filed to prevent a default.

▌ Plaintiff in error urges, as his only ground for reversal, that the judgment of the lower court is not sustained by sufficient evidence and is contrary to law. It is urged that the evidence as to the oral agreement for the substitution of the land involved for that originally sold, is not contradicted; that it was proven that Bolend was the owner of the five-acre tract involved, although the record title still stood in the name of Upshaw; that the lien of the judgment does not attach to the mere legal title to the land, standing in the name of the judgment debtor, when the equitable estate

is in another. It is also pointed out that the court, in announcing his findings, stated that he found, "that all of the parties and witnesses were acting in good faith in this case"; though, in the journal entry, the court finds all of the issues for the defendant.

In cases of this character, the presumption is in favor of the finding of the trial court, and it will not be set aside, unless against the clear weight of the evidence; and, where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general judgment. Miller et al. v. J. I. Case Threshing Machine Co., 140 Okla. 281, 300 P. 399; Herndon v. Shawnee Nat. Bank, 105 Okla. 207, 232 P. 432; Jones v. Storie, 172 Okla. 473, 40 P. (2d) 1067.

In this court, the findings of the trial court are deemed to be those contained in the journal entry, and no consideration can be given to oral observations of the trial judge when about to enter judgment, though set out in the case-made. Federal Surety Co. v. Little, 156 Okla. 75, 9 P. (2d) 447.

The alleged oral agreement with Upshaw, according to plaintiff, was made in the spring or summer of 1930. After that time, he called upon the attorneys for the mortgagee, upon several occasions, for the purpose of trying to save his interest in the 15 acres covered by the mortgage. After the foreclosure action was filed, according to the testimony of the mortgagee's attorney, plaintiff expressed his intention to endeavor to protect himself at the foreclosure sale; and this was not denied by the plaintiff. The answer filed in his behalf in the foreclosure action asserted a five-acre interest in the 15 acres herein involved; and though his attorneys did not know the exact nature of his claim at the time this answer was filed, it is obvious that they must have been informed by him that he still asserted some interest in the land involved. If he was then entitled to a deed from Upshaw to the other five acres upon demand, no explanation is offered as to why such a demand was not made. No demand for such a deed was made until after the execution upon the deficiency judgment was levied upon the five acres involved in the case at bar—long after judgment in the foreclosure case and sale of the 15 acres pursuant to the decree therein. These acts, unexplained, were hardly consistent with the theory of the plaintiff that prior thereto an oral modification of the contract between plaintiff

and Upshaw had been made, by which the five acres not covered by the mortgage was substituted for that embraced therein. We cannot say, after reviewing the record, that the findings of the trial court were against the clear weight of the evidence.

Judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Jos. L. Hull, Robert D. Hudson, and Elton B. Hunt in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hull and approved by Mr. Hudson and Mr. Hunt, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.