## MOYLE v. SALT LAKE CITY.

No. 2998.   Decided September 10, 1917.   (167 Pac. 660.)

1. WATERS AND WATER COURSES—CONTRACTS—CONSTRUCTION. A city, to obtain a supply of potable water which had already been appropriated, entered into a contract whereby the appropriators agreed to exchange the waters which they had appropriated for an equivalent quantity of water from a canal of which the city was the owner. The contract fixed the quantity of water which plaintiff, one of the appropriators, was entitled to receive from the city's canal, and obligated the city to maintain the canal in repair. The limits of the city were extended, and the land on which plaintiff formerly used the water for irrigation purposes became urban property, and she asserted the right to divert the water at another point on the canal and apply it to other lands. The diversion would in no way injure the city, but merely relieve it of the burden of transporting the water some distance. *Held* that, as the right of an appropriator of water to change the place of diversion is well recognized, plaintiff was, in view of the fact that waste of water is prohibited in arid countries, entitled to demand that the city allow her to take the water from a new location, where she could use it, notwithstanding she had, for many years after the contract was entered into, received the water at a different location.   (Page 361.)

2. WATERS AND WATER COURSES—APPROPRIATORS—CHANGE OF POINT OF DIVERSION. An appropriator of water, who was entitled to a given amount, may, for the purpose of increasing the benefit from his use, change the point of diversion.[1]   (Page 361.)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by Alice E. Moyle against Salt Lake City.

---

[1] *Hague* v. *Nephi Irrigation Co.*, 16 Utah, 421, 52 Pac. 765, 41 L. R. A. 311, 67 Am. St. Rep. 634.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED.

*H. J. Dininy, W. H. Folland,* and *M. C. Davis* for appellant.

*James H. Moyle, H. D. Moyle,* and *A. T. Sanford* for respondent.

FRICK, C. J.

The plaintiff commenced this action to require Salt Lake City to deliver to her certain water, to which, it is conceded, she is entitled under the contract hereinafter referred to, at a point other than where said water has been delivered by Salt Lake City since the year 1888, when the contract was entered into.    The facts are not disputed.    Those that are material, in substance, are:

That in June, 1888, Salt Lake City and certain farmers, who were the owners of primary water rights in what is known and called Parley's Canyon creek, a stream having its source in the Wasatch Mountains lying east of Salt Lake City and flowing westerly through Salt Lake valley into the Jordan river, entered into an agreement in which the owners of said water agreed to exchange the water obtained by them from said Parley's Canyon creek for water owned by Salt Lake City which it obtained from Utah Lake through the Jordan river, and through what is designated the Jordan & Salt Lake City Canal, which is owned by Salt Lake City. The exchange of the waters was made for the benefit of the inhabitants of Salt Lake City, in that the water from Parley's Canyon creek is potable mountain water, while the water obtained by the city from Utah Lake is nonpotable, but is suitable to irrigate the lands and crops of the farmers with whom the exchange was made.

The court found, and the findings are not questioned, that the plaintiff in this action is the owner of "144.5/2027" of the waters exchanged as aforesaid, which is the equivalent of "144.79 acre shares of the water of Parley's Canyon creek." The water used by the plaintiff was, for many years, used by

her within what is called the basin of Parley's Canyon creek and on lands lying immediately southeast of Salt Lake City, which lands, in the last few years, have, however, become a part of Salt Lake City, and have thus ceased to be used for farming purposes, but are being used for residential purposes by some of the inhabitants of Salt Lake City. In view of the changed conditions, the plaintiff no longer uses, or can use, said water on lands lying within the basin of Parley's Canyon creek. She, however, owns lands lying about five miles south of the lands on which she formerly used the water, and about five miles south of where the water has always been delivered to her, on which she can use all the water she is entitled to under said exchange agreement with Salt Lake City. Upon that subject the court found (which finding, to avoid repetition, we make a part of this statement) as follows:

"That plaintiff has no lands upon which said water can be beneficially used in or near the vicinity in which said water has been heretofore used, but the said water, of which said plaintiff is the owner, can be beneficially used upon her above-described lands, which are situate about five miles south of said point of diversion, and which lie adjacent to and immediately below said canal, as aforesaid. That the said quantity of water, of which plaintiff is the owner and thus entitled to use, can be diverted upon plaintiff's said lands out of said Salt Lake & Jordan Canal, through the weir aforesaid, without any damage whatsoever to said defendant city or to any person whomsoever, and does not impair any vested right of any person whomsoever, and said city will be saved the cost of conveying said water a distance of about five miles."

For the same reason we also insert here the material portions of the agreement entered into between the parties aforesaid:

"It is hereby agreed as follows: The parties of the first part, whose names are signed hereto, agree to exchange the waters of the Parley's Canyon creek to which they are entitled for an equivalent quantity of water from the Jordan & Salt Lake City Canal, * * * and to permit, allow, and authorize said party of the second part to take said waters of

the Parley's Canyon creek at any point it may choose, and devote the same to the use and benefit of the inhabitants of Salt Lake City. * * * The second party agrees to maintain all existing rights of the parties of the first part to the waters of the said Parley's Canyon creek, and to keep in repair the said Jordan & Salt Lake City Canal, and by its agent, jointly with the agent of the parties of the first part, and at the expense of the former, turn out from the said canal the proper portion of the water due to the parties of the first part on the exchange as aforesaid, and also to construct the necessary ditch or ditches, headgates, and dams to take out the said waters of the said canal and Parley's Canyon creek, and provide for rights of way for the same, all at its own cost and expense, and without cost or expense to the parties of the first part. * * * This agreement shall be perpetual, if the covenants and conditions herein expressed are kept and complied with.''

While nothing is contained in the agreement respecting the precise place where Salt Lake City was to deliver the plaintiff her share of the water, yet, as before stated, the water was delivered to her, ever since 1888, within the basin of Parley's Canyon creek, and at a point about five miles north of where she now seeks to have the same delivered.

The only defense interposed by Salt Lake City is that the plaintiff is not entitled to have the water delivered at any other point or place than the one where she first elected to receive it from the city, and that permitting her to take the water at some other place or point is violative of the provisions of the contract, and amounts to an impairment, or, at least, a change, of the obligation assumed by the city in entering into the contract.

Upon substantially the foregoing facts the court found all the issues in favor of the plaintiff, and entered conclusions of law and a judgment or decree requiring the city to deliver plaintiff the amount of water she is entitled to under the contract from the said canal, at the point selected and through the weir prepared by her, but without additional cost or expense to the city.

The city appeals, and the only propositions argued are the two we have stated above. True, counsel assign various reasons in their argument why plaintiff should fail, but the real reasons are those we have stated.

We fail to see how the judgment or decree in any way contravenes any of the stipulations contained in the city's contract. There is nothing in the contract specifying any particular place where plaintiff's share of the water shall be delivered to her. True, by receiving the water **1, 2** at a particular place for many years past the plaintiff could not now successfully urge that the city had not fulfilled its part of the agreement. Apart from the fact, however, that the water has been delivered as before stated, there is absolutely nothing in the contract that binds the plaintiff to receive the water at any particular place or point. Nor is there anything in the contract that prevents her from having the water delivered to her at any other point, provided always that in doing that she in no way inconveniences the city, or increases its cost or expense of delivering the amount of water to her to which she is entitled under the agreement. It no doubt is true, as contended by the city's counsel, that ordinarily, in case a place of delivery is fixed in the contract, the party agreeing to deliver cannot be required to deliver at any other place or point without disregarding the terms of the contract. As we have pointed out, however, there is no specific place of delivery fixed in the contract in question, and the only contention made by counsel in that regard is that the water had actually always been delivered to and received by the plaintiff at a certain place during the past. That, however, merely goes to show that she was willing to receive it, and that the city was also willing to deliver it, at that particular place. In case, however, no specific place of delivery is mentioned in the contract, but the party to whom a particular thing is to be delivered, nevertheless, receives it at a particular place, why may not such party ask to have the thing delivered at some other place, if to make the delivery at such other place is as convenient and no more expensive to the party required to make the delivery? In doing that,

how are the obligations of the contract either disregarded or impaired? If it were conceded, however, that the place of delivery could not be changed in case of a contract in which one party agreed to deliver specific articles of goods or merchandise to another for a term of years, it does not at all follow that it may not be done under a contract like the one in question here.

In arriving at a just conclusion in this case, it is important to keep in mind the subject-matter of the contract and the object or purpose of the parties. In connection with those, the law, as it affects the subject-matter of the contract, must also be kept in mind. The law upon the subject-matter of the contract in question is as much a part of it as though it were incorporated into the writing itself. What is the law regarding the use of water in this arid region? The law will not permit any owner to waste water, nor will it permit him to claim more than will supply his needs. If conditions change, the law, nevertheless, applies to the changed conditions. In this case the district court found that the plaintiff no longer can use the water where it was first received by her under the contract, but in that connection also finds that she can make a beneficial use of it at some other place under the city's canal, at which place it is just as convenient and no more expensive for the city to deliver the water to the plaintiff than at the point where it was first received, but where it can no longer be used, and, if delivered there, it will result in wasting the water. What, then, is the law applicable to such a condition? As a question of law does it not merely amount to this, that the plaintiff is seeking to change the point of diversion? Assuming the city's canal to be a natural stream, and that the plaintiff had appropriated and was entitled to divert the quantity of water found by the court from such stream, no one would doubt her right to change the place of diversion to some other point on the stream, so long as she, in making the change, did not interfere with the rights of any one else. The city concedes that the plaintiff is entitled to a certain quantity of water flowing in its canal, and that she has received it and it has been delivered to her at a par-

ticular place. Now, why may she not change the point or place of delivery precisely upon the same conditions and upon ' the same theory that she may change the point or place of diversion on the stream, provided she does so without increasing or adding to the expense of the city in delivering the water to her? Is not the right to change the place of diversion under the law based upon the fact that conditions change, and that it may be that the original point of diversion selected by the appropriator no longer responds to his needs, and that to continue the old place of diversion may result in waste?

True, there are no contractual obligations involved where a change of diversion on a stream is made; but is it not pertinent to ask in what way are contractual obligations involved in this case? As we have seen, the law is a part of the contract, and it is conclusively presumed that the parties to the contract entered into every stipulation in view of the existing law. Indeed, they were bound to do so, and, if they had entered into stipulations that were contrary to law, those stipulations would be void. We must assume, therefore, that the parties to the contract in question had in mind the fact that the conditions not only might, but that they in all probability would, change, and that it might be that the plaintiff or some other of the parties to the contract might require the place of delivery changed, which, as we have seen, amounts to a change of the place of diversion, and that, when it became necessary to do that, the change could be made upon the same conditions that any other change of the place of diversion could be made, namely, at the expense of the party making the change and without interfering with the rights of others. The law respecting the right of another appropriator to change the place of diversion is well settled in this jurisdiction, and, so far as we are aware, in all other jurisdictions where the right to appropriate water is recognized. *Hague* v. *Nephi Irr. Co.*, 16 Utah, 421, 52 Pac. 765, 41 L. R. A. 311, 67 Am. St. Rep. 634; *Union Mill & Mining Co.* v. *Dangberg* (C. C.) 81 Fed. 73; 2 Kinney, Irr., etc. (2d Ed.), sections 857, 858; 1 Weil, Water Rights (3d Ed.), section 504.

We are of the opinion, therefore, that the district court has in no way invaded any contractual rights of the city, nor has it in any way disregarded any of its legal rights in entering the judgment appealed from.    We desire to add, in conclusion, however, that we do not want to be understood as holding that, although a person or corporation has agreed to deliver a certain quantity of water to another at a particular place, the place of delivery may not be changed in case the owner of the water can no longer use it at the original place of delivery, the same as the original place of diversion may be changed by the appropriator under the law.    It is not necessary to decide that question now, and therefore we express no opinion upon it.

For the reasons stated, the judgment is affirmed, with costs to respondent.

McCARTY, CORFMAN, and GIDEON, JJ., concur. THURMAN, J., being disqualified, did not sit in this case.