## SPRING CREEK IRR. CO. v. ZOLLINGER et al.

No. 3569.   Decided April 12, 1921.   (197 Pac. 737.)

1. WATERS AND WATER COURSES—APPROPRIATOR MAY CHANGE POINT OF DIVERSION TO TRIBUTARY. One who has made a valid appropriation of a portion of the waters of a river has a right to change his point of diversion to a stream constituting a tributary to such river at any subsequent time unless he thereby interferes with a prior appropriator on such stream.

2. APPEAL AND ERROR—WHERE FINDINGS ARE INDEFINITE, ARE NOT SUSTAINED BY EVIDENCE, AND DO NOT SUPPORT CONCLUSIONS, JUDGMENT WILL BE REVERSED. In an action to quiet title to the waters of a creek involving the issue whether the plaintiff or the defendants had priority to the use of water, where the findings of the court are indefinite as to who first appropriated the water, and where such findings are not supported by the evidence and do not support the conclusions of the court, the judgment will be reversed.

3. WATERS AND WATER COURSES—OWNER PRESUMED NOT TO HAVE ACQUIRED TITLE TO WATER BY ADVERSE USE. The presumption is against the acquisition of title to water by adverse use both as to parties on the upper portions of a stream and as to parties below.

4. WATERS AND WATER COURSES—ADVERSE USE MUST BE AS TO WATER NEEDED BY PRIOR APPROPRIATOR. Use of water for irrigation purposes to give one a title thereto by adverse use as against a prior appropriator must have been use of water needed by such prior appropriator, since, if prior appropriator did not need the

water, he had no right to interfere with others' use thereof.[1]

5. WATERS AND WATER COURSES—PARTY WHO CLAIMS TITLE TO ADVERSE USE HAS BURDEN OF PROOF. The burden is on the party who claims title by adverse use to establish the fact that the use was adverse.[2]

6. WATERS AND WATER COURSES—DIVERSION MADE BY ONE DITCH CANNOT BE TACKED ON TO THAT OF ANOTHER SO AS TO MAKE APPROPRIATION CONTEMPORANEOUS. Where appropriations are made at different points of diversion on a stream and by means of different ditches, the diversion made by each ditch is of necessity an independent appropriation, and the appropriation made by one ditch cannot be tacked on to that of another so as to make the appropriation contemporaneous, but, where one ditch is abandoned after appropriation is made, the same right may be transferred to another ditch subsequently made without losing its priority.

7. COSTS—DIVIDED EQUALLY WHERE JUDGMENT IS REVERSED AND CAUSE REMANDED BECAUSE OF INDEFINITENESS OF FINDINGS. Where the Supreme Court is required to reverse judgment and remand the cause on appeal because of the indefiniteness of the findings and failure of the findings to support the court's conclusions, the cost of appeal will be divided equally between the appellant and respondent.

Appeal from District Court, First District, Cache County; *J. D. Call*, Judge.

Action by the Spring Creek Irrigation Company against Jacob Zollinger and others. Judgment for defendants, and plaintiff appeals.

REVERSED AND REMANDED, with instructions.

*L. E. Nelson*, and *W. W. Maughan*, both of Logan, for appellant.

*Walters & Harris*, of Logan, for respondents.

---

[1] *Manning* v. *Fife*, 17 Utah, 232, 54 Pac. 111; *Cleary* v. *Daniels*, 50 Utah, 505, 167 Pac. 825.

[2] *Smith* v. *North Canyon Water Co.*, 16 Utah, 202, 52 Pac. 286.

THURMAN, J.

This is an action to quiet title to the waters of Clear creek, in Cache county, Utah. No controversy arises in respect to the pleadings; nor is it necessary to even state the substance of the pleadings, except to say that both plaintiff and defendants claim title to the waters of the creek, not only by prior appropriation, but by adverse user as well.

Clear creek is a tributary of Blacksmith Fork river, in Cache county, and is formed by springs rising in the valley. It is quite uniform and constant in flow during the irrigation season as compared with streams having their source in the mountains.

Plaintiff claims to be the owner of the right to use for beneficial purposes all of the waters of Blacksmith Fork river and its tributaries, including Clear creek, to the extent of 30 cubic feet per second, but none of said waters, except those of Clear creek, are involved in this litigation.

Plaintiff's predecessors in interest made the appropriation under which plaintiff now claims in 1879 by the erection of a dam across the Blacksmith Fork river, below its junction with Clear creek, and the construction of a canal leading therefrom to the vicinity of the lands to be irrigated thereby. Later on, in 1902, plaintiff changed its place of diversion of said waters to a point above the junction of the river with Clear creek by the construction of a dam in the river and a canal leading therefrom, which said canal crossed said Clear creek in such manner as to intercept the waters thereof. The canal thus constructed, after crossing Clear creek, formed a junction with the canal constructed in 1879.

Defendants' appropriations of the waters of Clear creek, in part date back to some time between 1878 and 1880; the exact date being the subject of dispute. The appropriations were made by means of dams placed in the creek and ditches leading therefrom. Both plaintiff and defendants, and their predecessors in interest, have used the waters so diverted by them for the irrigation of their lands, and for other beneficial purposes, ever since the first diversion thereof, as above

set forth. Both parties increased their area of irrigated lands during the first few years after their irrigation began, but it does not appear that the quantity of water originally diverted was materially increased. It required less water to irrigate the same quantity of land as time passed on. Such seems to have been the common experience of practically every community where irrigation is carried in on the arid region.

The trial court made elaborate findings of fact and concluded therefrom that the defendants are the owners of the right to the beneficial use of all the waters of Clear creek at points of diversion of their several ditches, as appurtenant to their lands, and that the plaintiff is the owner of the right to the beneficial use of all the waters arising and flowing in the channel below; in other words, plaintiff's right, as found by the court, seems to be in the nature of a secondary right, although not so denominated in the findings.

Judgment was entered in accordance with the conclusions of the court, from which judgment plaintiff appeals, and presents for our consideration numerous assignments of error.

On motion of appellant, seasonably made, appellant was permitted to amend its original assignments of error as to all assignments relating to the insufficiency of the evidence.

After a careful examination of the record, including a review of all the evidence appearing in the transcript and the briefs of counsel filed in the case, we regret we are unable to make a final disposition of the case, either by affirming the judgment of the trial court or entering findings and judgment of our own.

The findings are indefinite concerning the most vital issue presented by the pleadings. The main question to be determined by the trial court was the question of priority of right to the use of the water. In finding No. 3 the court found that plaintiff's predecessors in interest constructed a dam in Blacksmith Fork river and began the construction of a canal leading therefrom to their lands in 1879. As to the exact time in 1879 when the work was commenced the findings are

silent, although, as will appear later on, the exact time, as near as practicable, was of the very essence of the case.

In finding No. 11 the court, in dealing with the appropriations made by defendants, informs us that in 1878 one Milton D. Hammond appropriated water from Blacksmith Fork river for the irrigation of his lands by means of a ditch, and that said ditch, as a means of irrigation, proved to be impracticable, so that in 1879 he commenced the construction of ditches from Clear creek for the irrigation of the same lands. Again, the findings are silent as to the time in 1879 when Hammond commenced the construction of these ditches. There is nothing in the findings to indicate that an appropriation of water from Clear creek in 1879 should relate back to an abortive attempt to appropriate water from Blacksmith Fork river in 1878. Hence, as far as these findings are concerned, it does not appear which of the parties litigant first commenced the construction of their diverting works so as to make an appropriation of the waters of Clear creek. Nor is there anything anywhere in any of the findings from which this court can determine the essential fact as to which of the parties took the first step towards an appropriation of the water. Notwithstanding this condition of the record, the court finds as conclusions of law that the defendants are the owners of the right to the beneficial use of all the waters of Clear creek at the points of diversion of their several canals as appurtenant to the lands owned by them in severalty, and also that the plaintiff is the owner of the right to the beneficial use of the waters of said creek arising or flowing in the channel below.

When we consider the fact that defendants' diverting works, consisting of four dams and ditches leading therefrom, are all situated above plaintiff's point of diversion from said creek, the findings and conclusions simply mean that plaintiff's rights to said water are secondary only and subject entirely to the rights of the defendants of all the waters of the creek. We find nothing in the findings to warrant such a conclusion unless we could feel justified in holding as matter of law that the unsuccessful effort of Hammond

in 1878 to appropriate water from Blacksmith Fork river amounted to an appropriation of the waters of Clear creek at that time. We do not feel justified in so holding from the findings of the court, and hence we are forced to conclude that the first appropriation of the waters of Clear creek by both parties litigant was in 1879, but as to which was first the findings are silent. If we go into the evidence to ascertain the fact, it appears quite conclusive that plaintiff's predecessors in interest commenced the construction of plaintiff's diverting works in April, 1879, while Milton D. Hammond, defendants' predecessor in interest, did not commence until the month of June of the same year. Even if we could go so far as to credit defendants with Hammond's attempted appropriation of the waters of Blacksmith Fork river in 1878, it could by no means account for all of the appropriations claimed by defendants through their several ditches constructed by them and their predecessors in interest at a subsequent date.

Concerning the attempted appropriation of the waters of Blacksmith Fork river by Hammond in 1878, for fear our views of the law should be misunderstood, we will say once for all, if Hammond had made a valid appropriation of a portion of the waters of Blacksmith Fork river in 1878, in our opinion he would have had a right to change his point of diversion to Clear creek at any subsequent time unless he thereby interfered with a prior appropriator on that particular stream. But we cannot determine from the findings of the court that he succeeded in 1878 in making a valid appropriation. If we refer to the evidence, it is not clear to the writer that he even attempted to appropriate water from Blacksmith Fork river, As the evidence is brief, we quote literally all we are able to find on that particular point. Mr. E. M. Hammond, a son of Milton D. Hammond, and a witness for defendants, was asked to point out on the map (plaintiff's exhibit) where the ditch made in 1878 was put. The witness answered:

"I don't know whether I can or not. The first ditch we put in don't come from Clear creek; I think in here some place. There

is a kind of a low place, and the water running off in here, and we put a ditch across some high ground and put it into a slough that came down in here and dammed the slough up, but we did not get water enough to water much. The water then seeped away; we could not get a large enough stream. Q. Did you during the time your father was in possession of those lands put in any ditches from Clear creek? A. Yes, sir."

Then follows a statement of the witness that the ditches from Clear creek were constructed in 1879, as above set forth. It was this witness who also testified that their first ditch on Clear creek was commenced in June of that year.

For the foregoing reasons it is manifest that the findings of the court are not only indefinite, but do not support the conclusions to which we have referred. It is equally manifest that the evidence does not support the findings. For these reasons, if for no other, the judgment should be reversed.

There are other questions of greater or less importance that should be considered inasmuch as the case must be remanded for further proceedings.

The court found that plaintiff had not acquired title to the waters of Clear creek by adverse use. Appellant assigns that finding as error. We think there is no merit in appellant's contention. Indeed, according to our view of the law relating to title by adverse use, even if we had not examined the evidence, we would be inclined to doubt the probability of title by adverse use being acquired under such circumstances. The idea that parties situated on the upper stretches of a stream of water to which they are entitled, who need it for the irrigation of their crops, with dams and ditches already made, would allow other parties situated below them to claim, take, and use the water and deprive them of the use thereof every year continuously and uninterruptedly for seven years consecutively, is so utterly unbelievable as to seem almost preposterous. If the record should show that appellant used the water openly, peaceably, continuously, and uninterruptedly for the statutory period, it would be far more probable that such use was based upon an acknowledged and recognized right rather than upon a right acquired by adverse use.

The court also found that defendants had used the water peaceably, openly, continuously, under a claim of right, and adversely without interruption, except in four irrigation seasons, for the whole period of time since the ditches were constructed.

It is conceded that it is far more probable that a right by adverse use may be acquired by parties on the upper portions of a stream than by parties below for the reasons above suggested, but in either case the presumption is against acquisition of title in any such manner. In the instant case we find no suggestion whatever in the evidence that the plaintiff permitted defendants to use the water continuously for any consecutive period of seven years when plaintiff was needing the water. If plaintiff, during any period of time, did not need the water, it would have no right to interfere with defendants' use thereof. This is elementary doctrine.

In Long on Irrigation, at section 90, p. 160, discussing the question of title by adverse use, the author says:

"So also, where there is sufficient water in the stream to supply the wants and demands of all the parties, its use by one cannot be an invasion of the rights of any other, and hence cannot be the foundation of any prescriptive claim."

See cases in the footnote; also *Manning* v. *Fife,* 17 Utah, 232, 54 Pac. 111; *Cleary* v. *Daniels,* 50 Utah, 505, 167 Pac. 825; 2 Kinney on Irrigation, § 789, also page 1883; *Faulkner* v. *Rondoni,* 104 Cal. 140, 37 Pac. 883; *Egan* v. *Estrada,* 6 Ariz. 248, 56 Pac. 721.

The burden is on the party who claims title by adverse use to establish the fact that the use is adverse.

In *Smith* v. *North Canyon Water Co.,* 16 Utah, at page 202, 52 Pac. at page 286, this court laid down the following rule as to what constitutes title to water adverse use:

"The right of the defendant in the water would become fixed only after seven years' continuous, uninterrupted, hostile, notorious, adverse enjoyment; and, to have been adverse, it must have been asserted under the claim of title, with the knowledge and acquiescence of the person having the prior right, and must have been uninterrupted. To be adverse, it must have been accompanied by all the elements required to make out such adverse possession; the

possession must have been actual occupation, open, notorious, hostile, and under a claim of title exclusive of any other right, continuous, and uninterrupted for a period of seven years."

We do not think the defendants in the present case discharged the burden thus imposed.

Three of defendants' ditches from Clear creek were constructed on the east side of the creek leading therefrom to defendants' lands situate between the creek and the river. Another ditch, called the Fletcher ditch, now used by defendants, diverts water on the west side of the creek, and leads to lands situated on that side. This seems to have been one of the earliest constructed ditches leading from the creek. It is contended by appellant, however, that it was abandoned by Fletcher, who originally constructed it, and that it has been used by defendants only during comparatively recent years. The court in its findings seems to have treated appropriations made by all of these ditches as contemporaneous and all prior to plaintiff's appropriation in 1879. In view of the findings and conclusions of the court it is perhaps pertinent to state that, where appropriations are made at different points of diversion on a stream and by means of different ditches, the diversion made by each ditch is of necessity an independent appropriation, and the appropriation made by one ditch cannot be tacked on to that of another so as to make the appropriation contemporaneous. Of course, where one ditch is abandoned after appropriation is made, the same right may be transferred to another ditch subsequently made without losing its priority.

There is no serious question raised as to lack of diligence on the part of either plaintiff or defendants in perfecting their appropriations after the commencement of the construction of their respective diverting works on the stream in question. The number of acres actually irrigated by plaintiff and defendants when this action was commenced seems to be the fair measure of their respective appropriations. The main question to be determined is the priority of right. In connection with this the number of acres each is entitled

to irrigate and the duty of water should be definitely ascertained and stated in the findings. When this is done the conclusions will inevitably follow.

The judgment is reversed, and the cause remanded, with directions to the trial court to proceed in accordance with the views herein expressed; the entire cost of the appeal to be equally divided between appellant and respondents.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.