### LEHMITZ v. UTAH COPPER CO. et al.

#### No. 2193.

Circuit Court of Appeals, Tenth Circuit.

March 14, 1941.

Charles M. Morris, of Salt Lake City, Utah (Wm. L. Beezley and Sidney G. Reid, both of Salt Lake City, Utah, on the brief), for appellant.

C. C. Parsons, of Salt Lake City, Utah (Wm. M. McCrea, of Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Conflicting claims are involved predicated upon appropriations of water from Bingham Creek in Utah. The water of all streams and other sources in that state is the property of the public, subject to

existing rights to the use thereof. Section 100-1-1, Revised Statutes Utah 1933. Beneficial use is the basis and measure of rights to the use of water, § 100-1-3. Rights to unappropriated water may be acquired by appropriation in the manner provided in the statutes, and not otherwise. And the one first in time is first in right, § 100-3-1. One eligible to acquire unappropriated public water shall submit an application to the state engineer containing certain requisite information. If the proposed use is for irrigation, the application shall show the legal subdivisions of the land proposed to be irrigated, the total acreage, and the nature of the soil; and if it is for milling or mining, the application shall show the name of the mill and its location or the name of the mine and the mining district in which it is situated, and the place of diversion and return of the water shall be designated, § 100-3-2. The point of diversion may be changed, and water may be used for other purposes than those for which it was originally appropriated. But no such change shall be made if it impairs a vested right, without just compensation, and it can be made only on application to and approval by the state engineer. One holding an approved application for the appropriation of water may in like manner change the point of diversion, or purpose of use, § 100-3-3. An application for such change is to be treated as a corrected application, and the change shall not affect the priority of the original application, § 100-3-5. The application for an appropriation, with the approval or rejection of the engineer endorsed thereon, shall be returned to the applicant. If it is approved, the engineer shall require in the endorsement that actual construction shall begin within six months, and shall state the time within which it shall be completed and the time within which water shall be applied to beneficial use, § 100-3-10. But extensions of time not exceeding fourteen years may be granted upon proper showing of diligence or reasonable cause for delay, § 103-3-12. Upon it being made to appear to the satisfaction of the engineer, after published notice and proof, that an appropriation has been perfected, and that the water appropriated has been applied to beneficial use, he shall issue a certificate, in duplicate, setting forth the name and address of the person by whom such water is being used, the quantity in acre feet or the flow in second feet, the purpose for which it is used, the stream or source of supply, the date of the appropriation, and such other information as will fully define the conditions, § 100-3-17. With certain exceptions having no application here, the priority of an application shall be determined by the date on which the written application was received in the office of the engineer, § 100-3-18; and appropriators shall have priority among themselves according to the dates of their respective appropriations, each appropriator being entitled to receive his entire supply before another subsequent or junior to him has any right, § 100-3-21.

In June, 1933, Utah Copper Company, a mining corporation, filed with the state engineer the first application in suit. It was for the appropriation of 30 second feet of water to be used in the precipitation of minerals. After certain corrections had been made, the engineer approved the application in March, 1934, and fixed September 15, 1936, as the time within which the appropriation should be fully completed. The application is now owned by Kennecott Copper Company, a mining corporation. In March, 1936, an application was filed with the engineer for authority to change the point of diversion, and for a change in the use of the water. The application recited that it was desired to use the water for the precipitation of copper and other minerals, for all other uses incident or desirable in the conduct of such precipitation operations, and for the irrigation of lawns, flowers, shrubbery and gardens in the vicinity of Copperton. The precipitation plant and diversion works were virtually completed and placed in use in April; and about the middle of May all of the water of the stream—never exceeding 11.4 second feet—was diverted, used in the plant for the precipitation of minerals, passed to a so-called poison ditch and carried away from the Bingham Canyon watershed. In February, 1937, the engineer approved the application for authority to make the proposed changes in point of diversion and in use of the water, and he subsequently extended to September 15, 1940, the time for filing proof that the appropriation had been perfected. The water of certain springs was suitable for irrigation purposes. About ninety per cent of such springs were located in the bed in Bingham Creek. The course of the creek was changed past the springs, and the water from them was thus segregated and used for the irrigation of lawns,

flowers, shrubbery and gardens in the village of Copperton in accordance with the authority granted by the engineer.

In April, 1934, William Lehmitz, Jr., filed with the engineer the other application in question. It was for one second foot of water to be used between April 1 and October 25, of each year, for irrigating 49.48 acres of farm land. The point of diversion fixed in this application was six or seven miles below that fixed in the earlier application of Utah Copper Company. Utah Copper Company protested its allowance. The protest was disallowed, and in March, 1935, the application was approved and returned to the applicant. But in denying the protest and approving the application, the engineer advised the parties in writing that the issue was whether there was unappropriated water in the creek; that he lacked facilities with which to determine existing rights, except in a general way; that in doubtful cases it was more consistent to approve the application and afford the new claimant legal status and opportunity to determine the question than to deny the application; that with the approval of the application, if there were unappropriated water, the applicant could establish the point at issue without injury to the rights of the protestant; that if no unappropriated water existed he could not make proof and the application would fall in due course of events; and that the application was therefore approved. Immediately after such approval, the applicant constructed a dam, ditches, and other necessary facilities; and he diverted water from the stream, and applied it to the irrigation of his farm during the irrigation seasons in 1934 and 1935, and to about the middle of May, 1936. But when the entire flow of the stream was diverted for use in the precipitation plant of Kennecott Copper Company, he was deprived of any further water under his application.

Lehmitz instituted this suit for the restoration of the water alleged to have been wrongfully taken from him or for damages for the loss of it. The questions of validity and priority of the appropriations were tried to a jury. At the close of the evidence, the court instructed a verdict for defendants; judgment was entered; and plaintiff appealed.

The first contention is that certain water rights purchased from John M. Beattie and his wife and from G. S. Bastian and others cannot avail defendants as against the application of plaintiff. Defendants pleaded in their answer rights purchased from Beattie and wife and from Bastian and others. A witness testified that the Bastian right was purchased. No testimony was adduced concerning the Beattie right. But defendants do not rely here upon either of those rights. They rely solely and exclusively upon the application made by Utah Copper Company in 1933, and the action of the court in directing the verdict and entering the judgment was predicated solely upon the priority of such application over that of plaintiff. All questions concerning the purchased rights may therefore be laid aside.

■■ Next, it is argued that the rights of defendants acquired by virtue of the application filed in 1933, as amended, are not prior to those of plaintiff acquired by his application. After the application now owned by Kennecott Copper Company had been filed, plans were begun for the precipitation plant and diversion works. Before construction began, it was decided that a different location a very short distance from the one originally contemplated was advisable in the interest of efficiency. The company owned all of the land in that vicinity, except a narrow piece. The new location necessitated the purchase of that piece, and it was acquired early in 1936. The change in the location of the plant entered into the need for the change in point of diversion. And the plant as constructed was slightly larger than the one that was contemplated. But section 100-3-3, supra, expressly authorizes a change in the place of diversion, provided it does not impair any vested right. And section 100-3-5, supra, provides with equal clarity that such a change of an approved application shall not affect the priority of the original application. This change in place of diversion did not increase the quantity of water or otherwise enlarge any right to which the Copper Company was entitled under its application, senior in time to that of plaintiff. The change did not initiate any new right on the part of the Copper Company. And it neither enlarged nor diminished any existing right. It merely made use of an existing right at another place, without detriment or impairment of any vested right of plaintiff as a junior appropriator. A prior appropriator may make such a change. Moyle v. Salt Lake City, 50 Utah 357, 167 P. 660; Spring

Creek Irr. Co. v. Zollinger, 58 Utah 90, 197 P. 737; Gianulakis v. Sharp, 71 Utah 528, 267 P. 1017; Tanner v. Provo Reservoir Co., Utah, 98 P.2d 695.

Emphasis is also placed upon the change in the use of the water covered by the application of defendants. A small quantity of such water was changed as to use from the precipitation of minerals to the irrigation of lawns, flowers, shrubbery and gardens at the mining town. But again the change did not involve any additional or increased quantity of water. It was merely a change from one purpose authorized by the law of the state to another. Once more, such a change is expressly authorized by statute if it does not adversely affect some vested right of another, § 100-3-3, supra. Too, it is provided that a change of that kind of an approved application shall have no effect upon the priority of the original application, § 100-3-5, supra. No vested right of plaintiff as a junior appropriator was impaired or adversely affected. For that reason he cannot be heard to complain. Cf. Moyle v. Salt Lake City, supra; Spring Creek Irr. Co. v. Zollinger, supra; Gianulakis v. Sharpe, supra; Tanner v. Provo Reservoir Co., supra.

Finally it is urged that the question of the respective rights of the parties should have been submitted to the jury for determination. There was no conflict in the evidence as to the respective dates on which the two applications were filed with the state engineer or his action upon them, the date on which the application was filed for authority to change the place of diversion and the use of the water or the action taken upon it, the acts done by the parties under their respective applications, or the extension of time within which to submit proof that the appropriation of defendants had been extended. The evidence presented no issue in relation to these determinative facts. It has been explicitly and repeatedly held that where the evidence, with all the inferences which can justifiably be drawn from it, is such that reasonable minded men might honestly reach different conclusions concerning the matter in issue, the question should be submitted to the jury for determination. But where there is no conflict in the evidence or the inferences which reasonably may be drawn from it, so that a verdict for plaintiff or defendant, as the case may be, if returned, would have to be set aside, it is the duty of the court to direct a verdict. Slocum v. New York Life Ins. Co., 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Wirthlin v. Mutual Life Insurance Co., 10 Cir., 56 F.2d 137, 86 A.L.R. 138; United States v. Ingalls, 10 Cir., 67 F.2d 593; Central Surety & Insurance Corporation v. Murphy, 10 Cir., 103 F.2d 117; Farr Company v. Union Pacific Railroad Co., 10 Cir., 106 F.2d 437. Absent any dispute or conflict in the evidence having relation to the determinative facts, the court properly treated the questions as ones of law and directed a verdict.

The judgment is affirmed.