**INDEPENDENT–EASTERN TOR-
PEDO CO.**

v.

**ACKERMAN.**

No. 4794.

United States Court of Appeals
Tenth Circuit.

July 10, 1954.

George T. Reynolds, Taos, N. M., and
G. C. Spillers, Jr., Tulsa, Okl. (G. C. Spil-
lers, Tulsa, Okl., was with them on the
brief), for appellant.

Neil B. Watson, Artesia, N. M., for
appellee.

Before PHILLIPS, Chief Judge, and
MURRAH and PICKETT, Circuit
Judges.

MURRAH, Circuit Judge.

Appellee, E. D. Ackerman, d/b/a Ac-
kerman Well Service, sued the Appellant,
Independent-Eastern Torpedo Company,
to recover damages to his casing-pulling

equipment alleged to have been caused by the negligence of Appellant's employees in attempting to remove a nitroglycerin squib from an oil well. Federal jurisdiction is based upon requisite diversity of citizenship and amount in controversy.

The case was tried and submitted to the jury on unchallenged instructions, and this appeal is from a judgment on the verdict of the jury in favor of the plaintiff. The sole question is whether there was any evidence to submit to the jury on the issue of primary negligence, and if so, whether the plaintiff was contributorily negligent as a matter of law. Appellant takes the position that the trial court should have directed a verdict.

Appellee was engaged to pull the casing from an abandoned oil well in New Mexico. He placed his portable equipment upon the well, and when he was unable to pull the casing, the well owner then authorized him to employ the Appellant to attempt to loosen the casing in the hole by shooting it with nitroglycerin.

Appellant sent its shooter, Don Butts, to the well, with the usual and customary shooting equipment, consisting of a truck upon which were mounted two hydraulic driven reels, one having a single-strand "shooting line", the other a heavier line of woven wire called a "torpedo line".

The shooter attached his "shooting line" to Appellant's bailer in order to lower nitroglycerin into the well in tin containers called "squibs". He then proceeded to shoot casing in the well at successive depths of 1750 feet, 1500 feet, 1000 feet and 600 feet. When these shooting operations were ineffective, it was determined to shoot the well at 400 feet with eight. quarts of nitroglycerin in two attached squibs with a firing pin in the top squib. As the shooter lowered this shot into the well, it became lodged approximately 22 feet from the surface of the ground. After unsuccessfully attempting to dislodge the squibs, he called Earl Carr, a trouble shooter for the company, who took charge of the operations.

The well owner instructed Appellee either to shoot the squibs where they were or to pull them out in order to stop the per diem on Appellee's equipment. When Carr asked Appellee what should be done, he replied, "I would like to pull it out, if we can get it out of there;" to which Carr replied, "If the shot goes off, it will be more apt to go off when the feelers or wickers (an unbrella-like arrangement of wires attached to the squibs) are turned on it."

Carr then attempted to remove the squibs by working with the shooting line by hand. While pulling on the line, it broke at a point where it was attached to the bail.

Carr then determined to use grab hooks attached to the torpedo line to pull the shot out of the well. He successfully engaged the squibs with the grab hooks and pulled them up the casing to a point five to ten feet from the surface where the shot exploded causing the damages to Appellee's equipment.

Appellee prosecuted his case on the theory that (1) Appellant's employees were negligent in failing to use care commensurate with the extreme hazards involved in continuing their efforts to remove the squibs after the wire holding the firing pin in place had become loose, and continuing to use the grab hooks after Appellee questioned the propriety of their use; and (2) failing to warn Appellee of the extreme dangers involved in removing the squibs in order that he might move his equipment to a place of safety.

 We know, of course, that the court is not authorized to take a case from the jury and direct a verdict for the defendant in a negligence action unless there is no competent evidence from which the jury can draw a reasonable inference of negligence. Saindon v. Lucero, 10 Cir., 1951, 187 F.2d 345; Worcester v. Pure Torpedo Co., 7 Cir., 1944, 140 F.2d 358; Greenfield v. Bruskas, 1937, 41 N.M. 346, 68 P.2d 921. Only when the court is convinced that he could not permit a verdict for the plaintiff to stand is he justified in directing a

verdict for the defendant. McKenna v. Scott, 10 Cir., 1953, 202 F.2d 23; Gill v. Reveley, 10 Cir., 1943, 132 F.2d 975; Lehmitz v. Utah Copper Co., 10 Cir., 1941, 118 F.2d 518. But the province of fact finding and inference drawing must be exercised in the realm of probability, not speculation, surmise and conjecture. Bearman v. Prudential Ins. Co. of America, 10 Cir., 1951, 186 F.2d 662; Fruehauf Trailer Co. v. Gilmore, 10 Cir., 1948, 167 F.2d 324; Franklin v. Skelly Oil Co., 10 Cir., 1944, 141 F.2d 568, 153 A.L.R. 156; Worcester v. Pure Torpedo Co., supra; Polz v. Donnelly, 1949, 121 Colo. 95, 213 P.2d 385.

■ There is absolutely no evidence in the record that the wire which held the firing pin to the bail of the squib had broken, or that the firing pin had actually become loose. The Appellee and the shooters were unable to determine from looking into the well with the aid of a mirror whether the tie wire used to hold the firing pin securely in place had become loose from the container when the shooting wire broke from the bail. No one knew whether the grab hook caused the explosion, and although Appellee questioned the propriety of using the grab hooks, there is nothing in the record to indicate that the weight of the grab hooks or the manner of their use in any way caused or contributed to the explosion. See Bean v. Independent Torpedo Co., 8 Cir., 1925, 4 F.2d 504; Carter Oil Co. v. Independent Torpedo Co., 107 Okl. 209, 232 P. 419. No witness could explain the cause of the explosion, or even conjecture whether the firing pin, or the grab hooks, or friction or the very nature of nitroglycerin caused the squibs to explode. There was no probative evidence to submit to the jury on those two points. We think it was clearly error to allow the jury to speculate on the cause of the detonation. Bean v. Independent Torpedo Co., supra; Carter Oil Co. v. Independent Torpedo Co., supra; Independent Torpedo Co. v. Carder, 165 Okl. 87, 25 P.2d 62.

The question remains whether Appellant was negligent in failing to warn Appellee to remove his equipment knowing the dangers involved in the removal of the squib.

■ Appellant and Appellee were independent contractors with the well owner, but there was no contractual relationship between them. Each owed the other the duty of exercising ordinary care under the circumstances. One having superior knowledge of dangers or hazards to which both are subjected owes the other a duty to warn him of the dangers, and failure to do so in the circumstances gives rise to an inference of negligence. Wiseman v. Northern Pac. Ry. Co., 1943, 214 Minn. 101, 7 N.W.2d 672; Long Const. Co. v. Fournier, 1942, 190 Okl. 361, 123 P.2d 689. But neither party owes a duty to warn the other of dangers or hazards of which both are equally cognizant. 38 Am.Jur., Negligence, Sec. 91, pages 750-1; Wiseman v. Northern Pac. Ry. Co., supra; Long Const. Co. v. Fournier, supra. And see Morales v. L. W. Blinn Lumber Co., 1935, 9 Cal.App.2d 292, 49 P.2d 621; Shanley v. American Olive Co., 1921, 185 Cal. 552, 197 P. 793; City of Tulsa v. Harman, 1931, 148 Okl. 117, 299 P. 462.

Appellee testified that he had never been a well shooter by training or experience; that he had never been present when an undetonated squib was being pulled from a well; that he relied upon the shooters to "quit" when the operation became too hazardous. He testified that he did not attempt to move his equipment because he did not know what the shooters would use for the attachment of their torpedo line if they did not use his equipment.

But the evidence showed without dispute that the Appellee was 46 years of age at the time of the trial and had worked in the oil fields all of his working life—the last 7 years as an independent contractor in the casing pulling business. He had seen at least 25 wells shot, many of them being multiple shots, and was familiar with the nature and operation of shooting squibs. He admitted knowing that the removal of the squib was a dangerous operation. One of his employees

testified that they all knew it was an extra hazardous operation; that casing pullers do not usually assist in removing squibs and they usually "take off" since they have no "confidence in nitroglycerin." Appellee knew that the squib was lodged near the well head. He observed the well shooters moving their truck and nitroglycerin equipment to a safe distance from the well, and he also instructed his employee to move his pickup truck away from the well. He stood away a safe distance while the well shooter was pulling on the shooting wire by hand to dislodge the squib.

Indisputably all of the parties present knew of the extreme hazards involved in the operation. In these circumstances, Appellee's plea of ignorance of the hazards involved is without any factual foundation. The evidence shows without dispute that with knowledge of the hazardous conditions involved, he suspended his "bailer" from the mast of his truck, thus inviting the shooters to use it in the pulling operation. It is no answer to say that he did not know what the shooters would have used for their torpedo line if they did not use his equipment. The undisputed fact is that he was under no obligation to furnish the equipment. He could have removed it at any time for the shooters were fully equipped for the complete shooting operation.

The only permissible inference to be drawn from the evidence is that with full knowledge of the extreme hazards involved, he voluntarily placed his equipment at the disposal of the well shooters; that the well shooters used his equipment with his full knowledge and consent; and he cannot now complain of negligent failure to warn of dangers of which he was equally cognizant and in which he voluntarily participated.

Despite our extreme reluctance to overturn a jury verdict submitted on unchallenged instructions by a seasoned trial judge, we are constrained to hold that there is no factual basis for the verdict, and the case is accordingly reversed with directions to enter a judgment for the defendant.