*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2014 UT 35**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

PAUL SOUTHAM,
*Plaintiff and Appellant,*

*v.*

SOUTH DESPAIN DITCH COMPANY, a Utah
nonprofit mutual irrigation company,
*Defendant and Appellee.*

No. 20120831
Filed August 29, 2014

Third District, Salt Lake
The Honorable L.A. Dever
No. 080923857

Attorneys:

Phillip E. Lowry, Salt Lake City, for plaintiff

Dale B. Kimsey, Sandy, Dean Smith, Midvale, for defendant

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1 This lawsuit was filed by a predecessor of Paul Southam against South Despain Ditch Company. Southam acquired shares in South Despain in contravention of corporate restrictions on transferability of South Despain shares. When the company sought to enforce those restrictions against Southam, he challenged their enforceability and asserted that their enforcement put South Despain in breach of its obligations in contract, fiduciary duty, and the Utah Nonprofit Corporation Act.

¶2 The district court granted summary judgment for South Despain. We affirm. Because the restrictions on the transfer of South Despain shares are enforceable, Southam acquired no rights

as a shareholder. And for that reason his claims for breach of contract, breach of fiduciary duty, and violation of the Utah Revised Nonprofit Corporation Act also fail as a matter of law.

I

¶3    South Despain is a nonprofit mutual irrigation company that manages and maintains the distribution of surplus runoff water from Little Cottonwood Creek. It distributes that surplus water to its shareholders in Sandy, Utah. South Despain's bylaws include a series of restrictions on transfer of ownership of shares in the company: (1) South Despain's board of directors must approve and record all transfers of the company's shares; (2) a prospective shareholder must be able to connect to the company's water system;[1] and (3) shares must be sold and purchased at a fixed dollar amount (currently $1,100 per share).

¶4    In 2005, the Jordan School District sought to sell twenty-three South Despain shares in a sealed-bid public auction. When South Despain learned of the impending sale, it sent a letter reminding the District of the transfer restrictions and advising that any sale of South Despain shares not abiding by those restrictions would not be recognized. Despite the letter, the District sold its shares to Evan Johnson and James Garside for approximately $1,945 per share.[2] Garside did not own property in the Granite community, nor was he otherwise able to connect to South Despain's water system, and in any event the sale price was nearly $1,000 above the fixed amount set by South Despain and the South Despain Board had not approved the transfer of shares to Garside.

---

[1] Southam characterizes this proviso as requiring that the prospective owner actually own property in the "Granite community," the location of its distribution system in Sandy, Utah. But as South Despain explains, "[t]he required condition is that the potential shareholder be able to physically connect to the pipe system." The two concepts have occasionally "been used synonymously," however, because "the ability to connect nearly always arises by virtue of owning or occupying property within or near the pipe system."

[2] Johnson's interests in the shares were eventually transferred to Garside. Johnson is not a party to this litigation.

¶5 After the sale, Garside asked South Despain to issue new share certificates in his name and recognize him as a shareholder. South Despain refused, claiming that the sale violated the transfer restrictions and was therefore void.

¶6 Garside and the District then asked to inspect South Despain's corporate records in accordance with their rights as shareholders. South Despain granted the District's request but denied Garside's on the ground that his purported shareholder interest was invalid.

¶7 Garside filed suit for breach of contract, breach of fiduciary duty, and violation of the Utah Revised Nonprofit Corporation Act. He also sought to challenge the South Despain transfer restrictions as an unlawful restraint on alienation. Both parties moved for summary judgment. The district court granted South Despain's motion and denied Garside's, upholding the enforceability of the South Despain transfer restrictions and therefore concluding that Garside's claims failed as a matter of law.

¶8 Garside died while the case was pending in the district court. His widow transferred the Garside interest in the South Despain shares, and in this litigation, to Southam, and Southam was substituted as plaintiff. Southam now proceeds before us as the plaintiff-appellant.

¶9 On this appeal by Southam, we review the district court's decision on summary judgment for correctness, according no deference to its assessment of the issues.[3] *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

---

[3] Before oral argument, South Despain filed a motion to strike Southam's briefing and seeking attorney fees under Utah Rule of Appellate Procedure 24(k), asserting that Southam's briefing contained inaccuracies and misrepresentations. Southam moved to strike that motion and also sought a fee award of its own. We deferred disposition of these motions and now deny them. Whatever deficiencies may exist in the briefing or filings of the parties, they do not warrant sanctions or attorney fees. *See, e.g., Nipper v. Douglas*, 2004 UT App 118, ¶¶ 19–20, 90 P.3d 649 (awarding attorney fees where briefing was "extraordinarily deficient"); *Rosendahl v. Rosendahl*, 876 P.2d 870, 876 n.1 (Utah Ct. App. 1994) (declining to

II

¶10 All of Southam's claims depend on the viability of his status as a South Despain shareholder—and thus on the enforceability of the corporation's transfer restrictions. If the transfer restrictions are enforceable, then Southam's shares are invalid. And if Southam lacked a valid shareholder interest, then he would not have standing to advance his claims for breach of contract, for breach of fiduciary duty, or for violation of the Utah Revised Nonprofit Corporation Act. The issues on appeal are therefore addressed to the enforceability of South Despain's transfer restrictions, as it is undisputed that the Garside/Southam interest was acquired in contravention of those restrictions.

¶11 Southam raises two sets of challenges to the enforceability of the South Despain transfer restrictions. His first set of arguments question the lawfulness of the restrictions. His second argument asserts that South Despain waived its right to enforce its transfer restrictions by failing to enforce them against Sandy City. We reject both sets of arguments and affirm summary judgment for South Despain.

A

¶12 Our assessment of the enforceability of the South Despain transfer restrictions begins with the text of the governing statute. The applicable provision is section 606 of the Revised Nonprofit Corporation Act. That section is in two parts. Part (1) states that "[u]nless otherwise provided by the bylaws, a member of a nonprofit corporation may not transfer: (a) a membership; or (b) any right arising from a membership." UTAH CODE § 16-6a-606(1). Part (2) then provides that "[w]here transfer rights have been provided, a restriction on transfer rights may not be binding with respect to a member holding a membership issued prior to the adoption of the restriction, unless the restriction is approved by the affected member." *Id*. § 16-6a-606(2).

¶13 The import of these provisions is straightforward. First, shares in a nonprofit are presumptively nontransferable—in that the lack of a bylaw provision for transfer is the equivalent of a prohibition on transferability. And second, restrictions on transfer

strike brief absent "egregious" noncompliance with rules of appellate procedure).

in a nonprofit's bylaws are subject to a single statutory limitation—that such restrictions are not retroactively binding (absent consent) on shareholder interests acquired before their adoption.

¶14 Despite these provisions, Southam presses two sets of common law grounds for challenging the enforceability of the South Despain transfer restrictions. He argues first that the restrictions are incompatible with the "beneficial use" element of Utah water law, and second that they contravene rules regarding restrictions on alienability of interests in real property. We reject both sets of arguments as foreclosed or preempted by the clear, comprehensive terms of section 606 of the Revised Nonprofit Corporation Act.

1

¶15 Southam's first argument is rooted in the water law principle of beneficial use. Citing an extensive line of our cases, Southam notes that this court has long identified the "beneficial use" of water as a fundamental element of Utah water law.[4] And he asserts that beneficial use is best advanced by preserving flexibility in the development and transfer of water rights. Thus, citing another line of cases, Southam insists that the public policy embedded in our water law directs a decision here vindicating the free transferability of shares in South Despain.[5]

---

[4] *See, e.g.*, *Wayman v. Murray City Corp.*, 458 P.2d 861, 863 (Utah 1969) (stating that "both our statutory and decisional law have been fashioned in recognition of the desirability and of the necessity of insuring . . . the most continuous beneficial use of all available water"); *see also* UTAH CODE § 73-1-3 ("Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state.").

[5] *See E. Jordan Irrigation Co. v. Morgan*, 860 P.2d 310, 313–14 (Utah 1993) (irrigation company, not shareholders, hold "title" to water right, but company cannot prohibit shareholders from moving their shares outside distribution area without showing of demonstrable harm to company); *Syrett v. Tropic & E. Fork Irrigation Co.*, 89 P.2d 474, 475 (Utah 1939) (shareholder not required to file change application when diverting water from different point within system despite company's opposition); *Baird v. Upper Canal Co.*, 257 P. 1060, 1065–66 (Utah 1927) (holding that water delivered

¶16 Southam's argument falters on two grounds. First, it is foreclosed or preempted by the clear, comprehensive terms of the Revised Nonprofit Corporation Act. The above-quoted terms of section 606 of that Act speak directly to the transferability of shares of a nonprofit corporation like South Despain. And they do so in a comprehensive manner foreclosing any common law limitations on transferability.

¶17 By expressly endorsing a *legislative* presumption of the *general* nontransferability of nonprofit shares, *see* UTAH CODE § 16-6a-606(1), section 606 leaves little room for a *judicial* determination that *more limited restrictions* are void as contrary to public policy. Any lingering doubt on the matter is eliminated, moreover, by the legislature's prescription of a single limitation on the enforceability of transfer restrictions. *See* UTAH CODE § 16-6a-606(2). In context, the express prescription of a sole statutory limitation is an implied proscription of any other limitations. *See Carrier v. Salt Lake Cnty.*, 2004 UT 98, ¶ 30, 104 P.3d 1208 (articulating the canon sometimes known as *expressio unius est exclusio alterius*—that "the expression of one should be interpreted as the exclusion of another" (internal quotation marks omitted)). Where the legislature provides only that share transfer restrictions are void only if applied retroactively, the implication is that prospective restrictions are permissible.

¶18 It is true, as Southam notes, that the value of the South Despain shares is in the water rights to which the shares afford access. But the transaction in question is not the transfer of water rights per se; it is the transfer of shares in a nonprofit mutual irrigation company. And a nonprofit mutual irrigation company is still a nonprofit company—governed by the Revised Nonprofit Corporation Act. Thus, the transferability of South Despain's shares is regulated specifically and comprehensively by section 606 of that Act, and not by our common law water cases.

---

into stockholder's private pipe line by irrigation company becomes his personal property with right of disposal); *Moyle v. Salt Lake City*, 167 P. 660, 662–63 (Utah 1917) (holding that absent contractual provision to the contrary, petitioner could take water to which she was entitled from city at point of her choosing unless city could show prejudice or harm).

¶19 Second, and in any event, the water law principles advanced by Southam are unavailing. Our cases have never articulated a hierarchy of beneficial uses. They merely establish a preference for *beneficial use* over *waste*.[6] And Southam's argument falters because it presupposes a hierarchy of beneficial use.

¶20 No one disputes that the Jordan School District's use of the South Despain shares was beneficial—in the sense of a "reasonable and economical use of . . . water in view of other present and future demands upon the source of supply." *Delta Canal Co. v. Frank Vincent Family Ranch, LC*, 2013 UT 69, ¶ 23, __ P.3d __ (internal quotation marks omitted)). Instead Southam's argument is essentially that his use will be *more beneficial*, and thus that a policy of free alienability of South Despain shares is in line with the above-cited principles of Utah water law. But even assuming for the sake of argument that this assertion is not foreclosed by section 606 of the Revised Nonprofit Corporation Act, it still would fail. Because our doctrine of beneficial use encompasses no hierarchy of beneficial uses, Southam has no viable claim to a preference for the free alienability of the Jordan School District shares purchased by Garside (and ultimately transferred to Southam).

¶21 Southam's water law arguments accordingly fail. At bottom, his position questions the wisdom of the policy embedded in section 606 of the Revised Nonprofit Corporation Act and in longstanding principles of Utah water law. We see no basis for his arguments, however, and no room in the statute for a policy judgment overriding that of our legislature. *Cf. McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 11, 274 P.3d 981 (emphasizing the role of the court to "advance the public policies enshrined in Utah statutes," and "not to advance others that we might find controlling if we had a policymaking role").

2

¶22 Southam presses a similar argument under the common law presumption against rules restricting alienation of real prop-

---

[6] *See, e.g., Baird*, 257 P. at 1065 (stating that "water, whether used for irrigation, culinary, or domestic purposes, is too valuable to be wasted when it can be put to a beneficial use"); *Moyle*, 167 P. at 662 (stating that "[t]he law will not permit any owner to waste water," but instead dictates beneficial use).

erty. Because water is a form of real property, and the value of the South Despain shares is in the value of the water rights to which the shares afford access, Southam asks us to consider—and to strike down—South Despain's transfer restrictions under common law rules regarding restraints on alienation of real property.

¶23 This argument likewise fails in light of the clear and comprehensive terms of the Revised Nonprofit Corporation Act. Again, the transaction at issue is not the transfer of real property interests in water; it is the transfer of shares of a nonprofit corporation.[7] And again, the transferability of shares in that company is regulated specifically and comprehensively by section 606 of the Revised Nonprofit Corporation Act, and not by common law property rules. Because the terms of section 606 leave no room for a limitation on transfer restriction rules based on the law regulat-

---

[7] As Southam notes, we have rejected the argument that an interest in a mutual irrigation company is a "security" governed by our Investment Securities Act, Utah Code section 70A-8-102(1), and in so doing have characterized the interest as one involving real property. *See Salt Lake City Corp. v. Cahoon & Maxfield Irrigation Co.*, 879 P.2d 248 (Utah 1994). But the *Cahoon* case can hardly be understood to establish the general applicability of real property law in regulating interests in mutual irrigation companies. *See id.* at 252 (noting that "the mutual irrigation corporation's articles of incorporation, if valid, govern any transaction involving the stock" (footnote omitted)). And that proposition, moreover, is incompatible with the well-settled principle that an interest in a corporation is distinct from an interest in the assets owned by the corporation. *See Kaiser v. Bowlen*, 455 F.3d 1197, 1208 (10th Cir. 2006) (It is "well established as a 'basic tenet of American corporate law . . . that the corporation and its shareholders are distinct entities' and an 'individual shareholder . . . does not own the corporation's assets.'" (alterations in original) (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, 475 (2003))); *Pac. Lumber Co. v. Superior Court*, 276 Cal. Rptr. 425, 429 (Cal. Ct. App. 1990) ("[T]he shareholders of a corporation have no ownership right to the real property of the corporation but only a right to ownership of the shares."); *see also Nat'l Am. Life Ins. Co. v. Bainum,* 497 P.2d 854, 855 (Utah 1972) (A "corporate entity [is] separate and apart from its stockholders.").

ing the assets owned or encompassed by the corporation in question, we view the statute to be the sole source of any legal limitation on rules regarding the transfer of nonprofit shares.

B

¶24  To establish a waiver of South Despain's share transfer restrictions, Southam would have to demonstrate an *intentional* relinquishment of its right to enforce them. *See Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 940 (Utah 1993) (establishing, as elements of waiver, both knowledge of an existing right and intention to relinquish it). Southam has cited no evidence of any expressly stated intent on South Despain's part. He instead asserts only that South Despain once failed to enforce its restrictions in full—in approving Sandy City's acquisition of shares in 1977, despite Sandy's lack of ownership of property in the Granite community.

¶25 We find that isolated instance insufficient to establish waiver. An intent to relinquish a known right could conceivably be inferred from a party's failure to enforce it. But to justify such an inference, a pattern of inaction would generally be required. *See Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 2011 UT 35, ¶¶ 45, 51–53, 266 P.3d 671 (stating that waiver of a contractual right can be implied, but requires a course of conduct "inconsistent with [the enforcement of] its contractual rights"). An isolated instance of non-enforcement, without more, could indicate only inattention or negligence. And we see no reason to deem the Sandy City example as indicating anything more than that, as we find nothing in the record to suggest that this isolated instance amounted to an intentional relinquishment.

¶26 In any event, we agree with South Despain that the cited example does not appear to have contradicted the applicable restrictions on share transfer. South Despain's bylaws do not require ownership of property in the Granite community as a precondition to transfer. They merely require an ability to connect to the South Despain water system[8]—a condition that Sandy City ap-

---

[8] We base this conclusion on the only evidence available on the record regarding the content of the bylaws, which are secondary sources such as letters and declarations. For reasons unknown, the bylaws themselves are not available in the record before us.

pears to have met.[9] We accordingly reject Southam's waiver claim as a matter of law.

### III

¶27  For the above reasons we affirm summary judgment in favor of South Despain. We hold that the South Despain transfer restrictions are enforceable and, thus, that Southam has no viable shareholder interest in the corporation. And absent such an interest, we conclude that Southam lacks standing to pursue any of his claims.

———————

[9] As the party asserting a claim of waiver, Southam bore the burden of producing evidence in support of a course of conduct establishing waiver. *See Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 24, 40 P.3d 599. Southam failed to carry that burden, as even he concedes that he established only that Sandy City owned no "property in the SDDC delivery area," a fact irrelevant to the question of whether Sandy City could connect to the South Despain water system.